UNITED STATES of America, Appellee,

v.

John LUSTERINO, Appellant.

No. 136, Docket 71-1541.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1971.

Decided Nov. 30, 1971.

Jerome Lewis, New York City (Jerome C. Ditore, New York City, of counsel), for appellant.

Edward R. Korman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E.D.N.Y., David G. Trager and George G. Bashian, Jr., Asst. U. S. Attys., of counsel), for appellee.

Before MURRAH\*, WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

John Lusterino appeals from a judgment of conviction on the first four counts of a five-count indictment after a jury trial in the United States District Court for the Eastern District of New York, Anthony J. Travia, *Judge;* the first three counts charged Lusterino and Grillo, his co-defendant who testified for the government and whose case was severed prior to trial on Lusterino's motion, with passing, attempting to sell and possession of counterfeit money (18 U.S.C. § 472). Count four charged Lusterino with possession and concealment of counterfeit money. He was sentenced to five years imprisonment on each count

to run concurrently. The trial court's denial of bail was reversed by this court and appellant is presently at liberty pending appeal. We find error and reverse and remand.

There is no doubt that Lusterino participated in the transaction which underlies the indictment. His principal defense was entrapment. The basic questions on appeal are: (1) whether he was prejudiced in presenting his defense of entrapment to the jury either by the government's improperly holding out Grillo, an informant, as a co-defendant, or by an erroneous charge on specific intent, and (2) whether procedural due process was violated either by the government's alleged failure to establish probable cause for a warrantless arrest and search at the suppression hearing or by the use of Grillo to obtain information from appellant after his arrest and indictment.

There was evidence, largely from Grillo's testimony, that the transaction of July 16, 1968 which formed the basis of the indictment, transpired as follows:

(1) 6 p. m. —Lusterino called Grillo seeking a buyer for counterfeit money; Grillo agreed to call back at 9 p. m. (this is the only important particular in which Lusterino's version of the facts differs from the government's: he stated that Grillo had called him pleading with him to obtain counterfeit money in order that Grillo could pay off a shylock who was threatening to kill him; he refused Grillo at that time, yielding to his importuning only at the later call.)

(3) 7 p. m. —Secret Service agents, acting on a New York Police Department tip, arrived at Grillo's apartment, took him to their headquarters in Manhattan, and obtained disclosure of the prospective transaction with Lusterino.

(3) 9 p. m. —Grillo called Lusterino at the Secret Service's behest and advised him a buyer was avail-

\* Senior Circuit Judge for the Tenth Circuit, sitting by designation.

able; a rendezvous was arranged for midnight at a Queens bar.

(4) 10 p. m. —Grillo with $300 in marked bills provided by the agents arrived at the bar accompanied by Agent D'Amelio.

(5) 11:30 p. m. —Lusterino arrived; shortly thereafter he and Grillo met in Lusterino's car, observed not by Agent D'Amelio but by two other federal agents, Bothe and Sweeney, who could not, however, see what happened inside the car, namely the exchange of the counterfeit for the marked bills; Lusterino then returned to the bar and Grillo to Agent D'Amelio's car; D'Amelio inspected a package given him by Grillo, determined it contained counterfeit money and ordered Lusterino's arrest; Lusterino was immediately searched, revealing the marked money and additional counterfeit money.

Grillo was taken back to the office of the Secret Service where he was fingerprinted and signed a statement. He talked with Lusterino at a lawyer's office on July 24, 1968, eight days after the arrest and testified on trial to Lusterino's effort to have Grillo take the blame for the offense in exchange for a promise by Lusterino to take care of Grillo's family while Grillo should be in jail, an offer repeated, according to Grillo, on two occasions, some six months later. Grillo was indicted with Lusterino July 31, 1968. At one time following indictment, when Lusterino consulted with Grillo at Grillo's apartment in the absence of counsel, a government agent was concealed in a closet to overhear their conversation. The court did not allow the agent to testify as to the conversation.

Grillo's case was severed at Lusterino's request, and subsequent to his testimony at Lusterino's trial the indictment against Grillo was dismissed on motion of the government.

On cross-examination, Grillo testified that he had received no promises from the government, that he had not pleaded guilty, but that he was just as much an accomplice as Lusterino, and that he was just as guilty as Lusterino.

Appellant urges that holding out Grillo, an informant controlled by the Secret Service, as a co-defendant prejudiced him before the jury since Grillo testified to the guilt of both defendants. The error was compounded, the argument runs, when the trial court charged that Grillo was an "accomplice" and refused to charge that Grillo was a government informant for whom Lusterino had acted as a "procuring agent."

The government, conceding arguendo that Grillo committed no crime, argues that his status as a co-defendant in no way prejudiced appellant, because (1) it was defense counsel on cross-examination in an attempt to weaken Grillo's credibility who brought out the fact he was a co-defendant and who elicited from Grillo the statements to the effect that both defendants were guilty; (2) defense counsel referred to Grillo as an accomplice in his own summation and requested the judge to charge the jury that the testimony of an accomplice must be weighed with great caution.

We need go no farther than this claim.[1] We are not persuaded that there

---

1. In view of our disposition of the case we need not rule on other points raised by appellant, two of which involve the charge.

Appellant attacks the charge on the inference that a person intends the natural and probable consequences of his act or acts knowingly done or knowingly omitted to be done, which was disapproved by us where specific intent must be proved in United States v. Barash, 365 F.2d 395, 402 (2d Cir. 1966). We assume this will not arise in retrial. Appellant also at-

tacks the failure to give a "procuring agent" charge. On retrial it may well be considered that such a charge is called for. Cf. United States v. Winfield, 341 F. 2d 70, 71 (2d Cir. 1965).

The use of Grillo to obtain post-indictment statements from Lusterino is also attacked. Cf. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); United States ex rel. O'Connor v. State of New Jersey, 405 F.2d 632 (3 Cir.), cert. denied, sub nom. Yeager

was no prejudice to Lusterino from the deception practised on the jury and do not condone the government's part in it. The prosecutor in the conduct of this case overstepped the bounds of permissible advocacy. It may be that there is a place for use of government agents or informers in providing occasion for criminal actions to others engaged in a criminal enterprise, and participating or pretending to participate therein, but the use made of Grillo here cannot be approved and we will not attempt to excuse it on the basis of defense tactics.

Even if no promises had been made to Grillo, the prosecutor knew that Grillo's participation in the purchase of counterfeits with marked money supplied by the agents was for the government's purpose to obtain evidence against Lusterino, not with criminal intent on Grillo's part. He knew that the indictment of Grillo was sham and could not properly be pressed. The continuance of a pretense of criminal participation may be essential to ferreting out the extent of criminal activity and evidence of its existence, but such a pretense has no place in a trial in court to provide a false basis for determination of guilt. The prosecutor could not honestly permit Grillo's profession of guilt before the jury to go unchallenged and a verdict to rest upon it.

It is contended that no harm was done. It is true that Grillo's status as an informer was explored on cross-examination and it may be that the jury was cynical enough to expect eventual dismissal of the charges against him and to disbelieve his denials of expectations of leniency. But the jury may have given some weight to his protestations

of guilt and coming punishment in crediting his version as against Lusterino's. When the prosecution participates in allowing a false picture to be painted, it bears a heavy burden of showing that it could not have affected the verdict. It has not shown that here. A verdict based on such a deception must be set aside.[2] Reversed and remanded for new trial.

---

v. O'Connor, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969); Hancock v. White, 378 F.2d 479 (1 Cir. 1967). Upon a new trial it would seem that it would be unnecessary to introduce into evidence any statements made by the defendant or between the defendant and the informer after the defendant had been indicted.

2. *Cf.* Justice Holmes dissenting in Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) " * * * for my part I think it a less evil that some criminal should escape than that the government should play an ignoble part."