**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jeffrow WHITLOCK, Defendant-
Appellant.**

**No. 71–1253.**

United States Court of Appeals,
Tenth Circuit.

March 15, 1972.

Rehearing Denied April 5, 1972.

Robert L. Pitler, Denver, Colo., for defendant-appellant.

A. Pratt, Kesler, Salt Lake City, Utah (C. Nelson Day, U. S. Atty., and H. Ralph Klemm, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

The appellant Whitlock was convicted of perjury in violation of 18 U.S.C. § 1621, the alleged offense having been committed during an earlier trial in the same court in the District of Utah. The first trial resulted in the conviction of Whitlock for a violation of the Mann Act, 18 U.S.C. § 2421, the unlawful transportation of a woman in interstate commerce for the purpose of prostitution. The foundation case was affirmed on appeal. Whitlock v. United States, 10 Cir., 429 F.2d 942. The principal contention of appellant in the case at bar is that the false testimony given during the Mann Act trial was immaterial to the issues of that case.

It was undisputed in the Mann Act case that Whitlock did transport a woman, known to him to be a prostitute, from Seattle, Washington, to Salt Lake City, Utah and that the woman lived with him after arrival in Salt Lake City for about four weeks. The determinative issue in that case was whether the purpose of such transportation was unlawful. The woman testified that she was carried to Salt Lake for the purpose of prostitution, that she practiced her profession after arriving in Salt Lake, and that she turned over her total income from such practices to Whitlock. Whitlock testified that he brought the woman to Salt Lake for her own convenience, that he came to Salt Lake to be with a sick son, and that he did not participate in her activities after arrival. The trial occurred about a year after the alleged offense and Whitlock's arrest therefor. He had been free on bond during the interim.

During Whitlock's cross-examination and over defense objection the prosecutor opened up the subject of Whitlock's apparent financial affluence at time of trial. In ruling that this general line of inquiry was proper the trial court stated:

THE COURT: Yes. Well, you opened up the question, and you submitted him to cross-examination. And one of the inquiries I think the Government is entitled to make is—If the fellow is living and spending at a

certain level of affluence and down in the quarters in this town where he says he has worked and is acquainted, the Government is entitled to ask him what he did, how much he made, where did he make it and, if the answers to those questions are not satisfactory, to cross-examine him on those matters. I suppose the Government has some knowledge, and I suppose pretty soon some of this will be tied up. Go ahead.

The trial court's ruling allowing inquiry on this subject was manifestly correct for obviously if Whitlock participated in the woman's Salt Lake income such fact was critical to a determination of his original purpose in transporting the woman from Seattle to Salt Lake.

Whitlock's testimony concerning his financial condition may be summarized narratively up to the point of his alleged perjurious answer. He testified that after coming to Salt Lake he was employed as a bartender in an area frequented by prostitutes at a salary of $100 per week; that from his salary he bought some clothes for the alleged victim; that the expensive shoes he was wearing at trial had also been purchased from his bartender's income; a question concerning the source of income for the three different suits he had worn during the trial days was left unanswered; and then the cross-examination climaxed as follows:

Q How long has it been since you worked?

A About three weeks ago.

Q Do you have a bank account?

A I have fifty dollars in the bank.

Q How much money do you have with you today?

A I have about two hundred dollars.

Q Where did that come from?

MR. PITLER: Your Honor, is that really material, what is done today, this very moment of time?

THE COURT: No, I don't think so.

After the Mann Act jury returned a verdict of guilty Whitlock was taken in custody by the United States Marshal, a deputy marshal, and a special security guard and taken to a lockup near the courtroom. When Whitlock's pockets were emptied prior to placing him in the lockup he had on his person the sum of $2,179.61.

An essential element of the crime of perjury is that the testimony alleged to be perjurious must relate to a material issue in the proceeding. Travis v. United States, 10 Cir., 123 F.2d 268; 18 U.S.C. § 1621. For a testimony to be "material" it must be capable of influencing the tribunal on the issue before it. Luna v. Beto, 5 Cir., 395 F.2d 35, cert. denied, 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568. We have no doubt that had Whitlock truthfully answered the key question premising this perjury prosecution, the amount of money he had on his person, that the trial court would have allowed further cross-examination in depth as to the source of the money; nor do we entertain any doubt that an unsatisfactory explanation of the possession of such an amount would be capable of seriously affecting the jury's consideration of Whitlock's credibility. We agree with the trial court that the testimony was material and hold that the court did not err in so instructing the jury in the case at bar.

We have considered all other appellate contentions presented and determine them to be negatived in fact by the record or to be totally without merit.

Affirmed.