**UNITED STATES of America,
Appellee,**

v.

**Vincent GUGLIARO, Appellant.**

**No. 1089, Docket 74–1378.**

United States Court of Appeals,
Second Circuit.

Argued June 6, 1974.

Decided July 19, 1974.

Shirah Neiman, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the S. D. of N. Y., John D. Gordan III, Asst. U. S. Atty., of counsel), for appellee.

Gustave H. Newman, Brooklyn, N. Y., for appellant.

Before KAUFMAN, Chief Judge, and MANSFIELD and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Vincent Gugliaro appeals from a judgment convicting him of making false declarations while under oath in a federal court. Judgment was entered in the United States District Court for the Southern District of New York on March 1, 1974, after a jury trial before Hon. Inzer B. Wyatt, *United States District Judge.* He also appeals from an order of Judge Wyatt of February 28, 1974, denying his motion for a new trial. Gugliaro was indicted on seven counts for making false declarations in violation of 18 U.S.C. § 1623. He was acquitted on six counts and convicted of one count (count 4) for which he was sentenced on March 1, 1974, to two years imprisonment with three months to be served in jail, followed by two years probation plus a $3,000 fine. His conviction is affirmed.

I

Gugliaro and fifteen other defendants were initially indicted on November 19, 1970, on charges of conspiracy to violate the securities laws and to commit mail fraud, together with the corresponding substantive crimes, in connection with the manipulation of securities of the Imperial Investment Corporation. The appellant and nine other defendants were tried on these charges before Judge Morris E. Lasker and a jury. Only two defendants, Bernard Weiss and Ronald Alpert, were convicted. Gugliaro was acquitted on the substantive counts and the jury disagreed on the conspiracy count. (This trial is hereinafter referred to as Imperial I). Gugliaro, together with other defendants, was retried on the conspiracy count before Judge Lawrence Pierce and a jury, and all were acquitted. (This trial is hereinafter referred to as Imperial II). Gugliaro, who did not take the stand in Imperial II, did testify. in his own defense in Imperial I, and his indictment for perjury in the present case was based on that testimony.

Gugliaro was convicted on count 4 below because the jury found false his testimony in Imperial I that he had not been in the Potpourri Restaurant and had never seen Weiss there.[1] Weiss and

---

1. Count 4 charged that Gugliaro knowingly testified falsely at Imperial I when he testified as follows:

    Q. Did you ever see him [Weiss] in the Potpourri restaurant?

    A. No, sir.

    Q. Were you ever in that restaurant, Mr. Gugliaro?

    A. No.

Alpert, who had been convicted in Imperial I and who were the co-owners (with a third party) of Potpourri, were stock swindlers who had played leading roles in the scheme. On the trial below, both Weiss and Alpert testified that, from November, 1969 through late January or February, 1970, they had had numerous meetings with Gugliaro at various places, including the Potpourri, to discuss the Imperial stock manipulation. Michael Hellerman, who had pleaded guilty in Imperial I prior to trial, also testified below that he had met with Gugliaro on numerous occasions at Gatsby's Restaurant, and also that Gugliaro had told him that he (Gugliaro) could meet with Alpert and Weiss at Potpourri. At one of the Gatsby meetings, Hellerman testified, he had paid Gugliaro $10,000, which represented profits on the deal and which was to be split with Alpert, Weiss and others. Weiss further testified that, after the Imperial I trial, Gugliaro had been fearful that the Government might be able to establish that he actually had been at Potpourri. He had advised Weiss that his defense would be that he had made an honest mistake since he knew the restaurant as Chez Joey before its name was changed to Potpourri. Both Weiss and Alpert testified that, after the name change, the Potpourri sign had been installed in October, 1969, and that the restaurant was eventually closed in May, 1970. Frances Sanoff testified that she had been employed by Alpert and Weiss as a hat-check girl and had seen Gugliaro in the restaurant on several occasions. Lucille Cicalo, who had worked as a waitress at the restaurant when it was known as Chez Joey and later when it became the Potpourri, testified that she had seen Gugliaro there on various occasions from September, 1969 until May, 1970.

## II

Appellant's major argument on appeal is that his perjury prosecution is barred by the constitutional guarantee against double jeopardy, i. e., the jury's acquittal of Gugliaro in Imperial II necessarily determined the issue to be decided on his perjury trial.[2] The question presented here is the same as that raised in our recent opinion in United States v. Tramunti, 501 F.2d 1334, 1346 (2d Cir. 1974), and the same principles of law are applicable.

■■ It is well understood that if an issue of ultimate fact has once been determined by a final judgment in a criminal case, the same issue cannot be relitigated between the same parties in a later prosecution. Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); United States v. Zane, 495 F.2d 683 (2d Cir. 1974). However, the burden is upon the defendant to show that the jury's verdict in the prior trial *necessarily* decided the issues raised in the second prosecution. United States v. Friedland, 391 F.2d 378, 382 (2d Cir. 1968); see United States v. Zane, *supra*, 495 F.2d at 691 n.5. Moreover, as we have noted in United States v. Tramunti, *supra*, this presents the defendant who has been acquitted in a criminal case with a most difficult burden since it usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict. 501 F.2d at 1346. See United States v. Cioffi, 487 F.2d 492, 498 & n.8 (2d Cir. 1973), cert. denied, 414 U.S. 1151, 94 S. Ct. 907, 39 L.Ed.2d 105 (1974).

■ The burden is thus upon the appellant here to establish that by acquitting him of conspiracy in Imperial II, the jury necessarily rejected the Government's evidence that Gugliaro met with Weiss at the Potpourri. As we have noted in *Tramunti*, this burden is particularly onerous where the acquittal in the criminal case involves the crime of conspiracy. 501 F.2d at 1346–1349. In order to prove Gugliaro's guilt of the conspiracy charge in Imperial II, the United States had to establish not simply that

2. Prior to trial of this case, the defense made a motion seeking dismissal of the indictment on the ground that the prosecution was barred by the doctrine of collateral estoppel. The motion was denied.

Gugliaro met Weiss at Potpourri, but, in addition, that they were conspiring to commit securities and mail fraud violations. In determining whether a rational jury could have believed that Gugliaro was present at Potpourri with Weiss and yet could have based its verdict of acquittal on other issues, we must look to the entire record of Imperial II, including the pleadings, the summations, the charge and the evidence. Ashe v. Swenson, *supra*, 397 U.S. at 444, 90 S.Ct. 1189; Sealfon v. United States, 332 U.S. 575, 578–579, 68 S.Ct. 237, 92 L.Ed. 180 (1948).

In our view, the jury might well have decided that the Government's proof that Gugliaro frequented the Potpourri and met with Weiss was credible but that this alone· failed to establish the conspiracy. It was suggested by trial counsel in his opening and summation in Imperial II that even if Gugliaro had been present at some meetings and known some of the persons charged with being parties to the scheme, it did not follow that his connection with the alleged conspirators was other than innocent. The restaurant was, after all, a public place and Weiss and Alpert were owners. The jury could reasonably have decided that the mere frequenting of the restaurant and being seen with a proprietor was not tantamount to participation in an unlawful conspiracy. See United States v. Tramunti, *supra*, 501 F.2d at 1348. In this connection, Judge Pierce had properly instructed the jury:

> I want to caution you that mere association with one or more of the conspirators does not make one a member of the conspiracy. Nor is knowledge without participation sufficient. What

is necessary is that the defendant you are considering be found to have participated with knowledge of at least some of the purposes of the conspiracy and with intent to aid in the accomplishment of those unlawful ends.

In short, the jury may have acquitted Gugliaro not because he had never been to the Potpourri or seen Weiss there, but because he lacked sufficient knowledge or intent to be a conspirator in the Imperial scheme.[3]

Another rational explanation for the acquittal here is that although the indictment charged that Gugliaro was a member of a single conspiracy, the jury may have found that several conspiracies existed, and that he could therefore not have properly been found guilty. United States v. Lopez, 420 F.2d 313, 317 (2d Cir. 1969). The jury was instructed on the issue of multiple conspiracies,[4] and, in summation, one defense counsel argued the point to the jury.

Appellant further argues that if his presence in the Potpourri with Weiss was not necessarily determined in the Imperial II acquittal, then his denial of this in Imperial I was not of sufficient materiality to sustain the indictment and conviction of perjury here. The argument is without merit. The test of materiality in a perjury case is whether or not the false testimony was capable of influencing the jury on the issue before it. United States v. Gremillion, 464 F.2d 901, 905 (5th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972); United States v. Whitlock, 456 F.2d 1230 (10th Cir. 1972). The misstatement of fact need

---

3. The credibility of Alpert was clearly in issue in Imperial II, and the jury could sensibly believe that, while the owner might well be minding the store, he had ample motive to implicate Gugliaro in order to curry Government favor.

4. The court charged:
   However, if you find that the evidence does not show one overall conspiracy but instead shows the existence of a number

of separate and independent conspiracies, as some of the defendants here have argued to you, each with its own aims and objectives and each with its own separate nucleus or core of conspirators, then you would have multiple conspiracies, and the government would have failed to establish the single overall conspiracy as charged, and it would be your duty to acquit the defendants on the charge of conspiracy.

not be "dispositive" of the inquiry in question to be material. United States v. Birrell, 470 F.2d 113, 115 n.1 (2d Cir. 1972). See also Barnes v. United States, 378 F.2d 646, 649 (5th Cir. 1967), cert. denied, 390 U.S. 972, 88 S. Ct. 1056, 19 L.Ed.2d 1184 (1968). Quite obviously it was material to the Government's conspiracy case to establish that Gugliaro met with Weiss at the Potpourri, since it tended to establish that Gugliaro was part of the Imperial scheme.

As we have already indicated, the United States had to establish not only the meeting with Weiss, but also that Gugliaro's meeting was evidence of participation with knowledge and the requisite intent in the single conspiracy with which the appellant was charged. While the meetings with another conspirator were clearly sufficiently material by any test to sustain a perjury indictment and conviction if Gugliaro had falsely denied them, a rational jury could find that they were, standing alone, insufficient to demonstrate participation with knowledge and the requisite intent in a single conspiracy. The appellant has therefore failed to establish that collateral estoppel barred the prosecution for perjury.

### III

■ The only other argument on appeal which merits discussion is the contention that the Government suppressed exculpatory material when it failed to disclose information that Weiss had been an FBI informant prior to the Imperial I trial. This is alleged to constitute a failure to comply with 18 U.S.C. § 3500 and also a violation of Brady ·v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On the trial below, Weiss testified that he had begun his cooperation with the United States Attorney's office in the autumn of 1972, while memoranda which were allegedly suppressed indicated that he had started to report to the FBI in February, 1971. It is argued that Weiss' testimony on the question of his cooperation was shown by the memoranda to have been false and that by permitting Weiss to falsely

testify and failing to correct the record, the Government had violated its obligations under United States v. Lusterino, 450 F.2d 572 (2d Cir. 1971). Moreover, the argument runs, Weiss the informant was permitted to infiltrate Gugliaro's defense in Imperial I in violation of his sixth amendment rights.

The argument is not supported by the facts in the record before us. In the case below, Weiss testified that during Imperial I he had had a conversation with Gugliaro in which the latter revealed his fear that his testimony that he had never met Weiss at Potpourri might well be vulnerable and that his defense to any Government efforts to prove its falsity would be that he knew the restaurant as Chez Joey. At the end of his direct examination the prosecutor turned over to Judge Wyatt for *in camera* inspection the allegedly suppressed memoranda. The memoranda, summaries of Weiss's cooperation with the FBI and his involvement in criminal activity, had previously been revealed to Judge Lasker and Judge Charles L. Brieant, Jr. on the sentencings of Weiss for the Imperial stock fraud and a second unrelated stock fraud respectively. Judge Wyatt ruled that since the memoranda were not statements of the witness, they were not properly 3500 material. This was a matter to be determined by the trial court in the first instance, Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963), and his determination was not clearly erroneous. United States v. Covello, 410 F.2d 536, 546 (2d Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969).

Judge Wyatt made no ruling on the *Brady* question at that time. However, while the jury was deliberating below, Weiss was testifying in another criminal case not involving Gugliaro. In that case, statements Weiss made to the FBI prior to the commencement of his cooperation with the United States Attorney's office were turned over to defense counsel as 3500 material. Trial counsel for Gugliaro obtained this material and

made a motion for a new trial urging the points made here. Judge Wyatt denied that motion, thus rejecting the *Brady* claim.

■ We find that the motion was properly denied. The claim of suppression is groundless since material indicating Weiss's relationship with the FBI was turned over for Judge Wyatt's examination below. Moreover, after our own review of the various reports, we conclude that the information concerning Weiss's status as an informant was not exculpatory. Indeed, with but one exception,[5] the reports do not even mention Gugliaro's name. Obviously, the mere fact that the statements to the FBI may have been relevant § 3500 material in an unrelated case does not make them pertinent here.

Furthermore, we find no false statement in Weiss's testimony concerning his cooperation in the Imperial prosecution, and thus there is no reason to apply United States v. Lusterino, supra. The reports shown to Judge Wyatt and the one turned over in the other case indicate that Weiss was giving information to the FBI as early as February, 1971, about certain organized crime figures engaged in other criminal activities. But with respect to the Imperial matter, which is germane here, Weiss continued to maintain his innocence and did not fully cooperate with the United States Attorney's office until the fall of 1972, just as he testified below. In fact, not only was Weiss tried and convicted in Imperial I, but he also failed to testify on behalf of the Government in Imperial II, which concluded in July, 1972. Moreover, Weiss's jail sentence for his Imperial I conviction was not suspended by Judge Lasker until March of 1973.

■ Since Weiss in fact testified accurately about his cooperation with the prosecution, the only use that could possibly have been made of the fact that he had been giving unrelated information to the FBI in early 1971 would have been to shake his credibility before the jury as the expectant recipient of Government benevolence in return for incriminatory evidence. We see no "reasonable likelihood" that this could have influenced the verdict. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The argument that Weiss was suspect was repeatedly made below on summation by defense counsel.[6] The appellant here was acquitted of all counts except count 4 and the testimony of Weiss was there corroborated by other witnesses. In view of the extensive attack upon Weiss' credibility that was in fact made, there is no

---

5. The only reference to Gugliaro in the reports is a statement in those turned over to Judge Wyatt in this case that Weiss had testified before a grand jury about Gugliaro's perjury in Imperial I. Weiss' grand jury testimony was presented to the defense upon completion of the direct examination of Weiss below.

6. Defense counsel referred to Weiss at one point in his summation as follows:

He acknowledged that he faced a long time in jail, maybe ten years, with 27 counts in Computer Field and he was allowed to plead to one count, and he admitted that this was his inducement for testifying and he admitted, also, on cross-examination—and that's why I say, you've got to look at the entire picture to look at the evidence, not when a man gets up here well-dressed on that witness stand, well-attired, in the latest of fashions and presents a story.

Listen to that story. See how he handles it. See what its substance is. See whether it is believable.

He tells you that he probably wouldn't testify if he couldn't save time from going to jail. The eight-month sentence he tells you was reduced. His one-year sentence on Lanai was suspended, and he hasn't been sentenced yet on Home of Country. And don't you think you are entitled to consider whether uppermost in Mr. Bernie Weiss's mind is the idea that he wants to cooperate so that he gets a recommendation from this prosecutor to that sentencing judge? Don't you think that after he has told you that he is here to save time in jail that he wants again, a favorable recommendation, a favorable word? And don't you think what he's doing by this testimony is seeking the favor and seeking that favorable word?

**74**

doubt that the additional information would, at best, have been of minimal value. United States v. Pfingst, 490 F.2d 262, 276 (2d Cir. 1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974).

The argument that Weiss was a sham defendant introduced into Imperial I as an informant to lull the suspicions of the other co-defendants is belied by the record. Weiss did not cooperate with the Government in regard to the Imperial scheme, he was convicted in that case and was thereafter twice indicted. His conversion came only at a later point. Gugliaro's disclosure to him of his intended perjury was a statement to a legitimate co-defendant and was a risk that people in this business will have to assume. United States v. Rosner, 485 F.2d 1213, 1226–1227 (2d Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). The conversation antedated the appellant's indictment for perjury and, for that reason, was not within the proscription of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

Affirmed.