UNITED STATES of America,
Appellee,

v.

David GARTNER, Defendant-Appellant.

No. 737, Docket 74–2566.

United States Court of Appeals,
Second Circuit.

Argued March 4, 1975.

Decided June 25, 1975.

Certiorari Denied Oct. 20, 1975.
See 96 S.Ct. 222.

Julia P. Heit, New York City (Robert Bloom, New York City, on the brief), for defendant-appellant.

Lawrence B. Pedowitz, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, James P.

Lavin and Lawrence S. Feld, Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY and GURFEIN, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

Appellant David Gartner appeals from a judgment after a non-jury trial before Charles E. Stewart, Jr., *District Judge,* finding him guilty of distribution of cocaine and conspiracy in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and of perjury in violation of 18 U.S.C. § 1623.

The sole basis for the appeal is that the Government in its zeal to apprehend criminals became a law breaker in deliberately and surreptitiously taping a conference between Gartner, his attorney Bloom, and a co-defendant known to be cooperating with the Government. Gartner claims that this conduct was so gross as to require a dismissal of the indictment in the interests of due process and the fair administration of justice.

Gartner and seven others,[1] including one Steven Gary Diskin, were indicted on September 15, 1972, for conspiracy to distribute and for the distribution of approximately 138.2 grams of cocaine. Gartner and Diskin were also charged with perjury before a Federal Grand Jury. Although the appeal is based on the narrow ground stated above, it is necessary for a full understanding to briefly state the underlying facts and circumstances giving rise to the conviction of Gartner and the others.

### I

On June 22, 1972, Special Agent John H. Diez of the Bureau of Narcotics and Dangerous Drugs (BNDD), acting in an undercover capacity, contacted an individual named Greg Otte in Wayne, New Jersey, who agreed to supply him with one-half pound of cocaine for $5,500. After an unsuccessful attempt with another source Otte, in an effort to meet his commitment, led the agents to various individuals in New Jersey and Queens, New York, without results. Finally, after making several stops along the way, Otte led the agents to a loft apartment at 85 Walker Street in lower Manhattan. There, after the agents were shown a quantity of cocaine by one Edward Baletti, a/k/a "Jesse Bambu," they immediately gave the signal to other agents which resulted in the arrest of several co-defendants and the seizure of the cocaine.

While the agents were interviewing Baletti in his loft apartment after the arrests, Agent Diez was permitted by Baletti to eavesdrop by means of an extension, on a phone call to Baletti from a person who identified himself as "Dave" and who asked if everything had gone well. Baletti replied that it had and asked Dave to come to the loft, but Dave refused and instead requested Baletti to meet him on a nearby street corner. Baletti and an agent then proceeded to the corner of Broadway and Canal Street where they were approached by Gartner and Diskin who after a brief conversation with Baletti and the agent were placed under arrest. Subsequently Gartner appeared before a Federal Grand Jury and admitted calling Baletti on July 10, 1972, but denied identifying himself as "Dave" during the calls and denied ever inquiring of Baletti if everything had gone well or words to that effect. Diskin also gave similar testimony before the Grand Jury.[2]

All but one of the eight defendants charged with conspiracy and possession of cocaine pleaded guilty. On December 18, 1972, Gartner and Diskin pleaded

---

* Of the Eastern District of New York, sitting by designation.

1. Steven Gary Diskin, Neil Veenstra, Stanley Silverstein, Thomas Parashac, Chen Kali, Edward Charles Baletti, a/k/a "Jesse Bambu," and Gregory Charles Otte.

2. This testimony provided the basis for the perjury indictments of both Gartner and Diskin.

guilty to an information charging conspiracy to violate the narcotics laws, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and it was agreed that the Government would seek an order of *nolle prosequi* as to the remaining charges against them. On June 15, 1973, however, Gartner moved to withdraw his plea of guilty and was granted leave to do so on July 31, 1973, after a three-day hearing.

The events upon which this appeal rests occurred just prior to Gartner's motion to withdraw his guilty plea. After pleading guilty, both Diskin and Gartner agreed to provide information concerning other narcotics dealers to the United States Attorney upon the understanding that the latter would call this cooperation to the attention of the Court at the time of sentencing. In May, 1973, five months after the plea of guilty was entered and while awaiting sentence, Gartner and his attorney Bloom had apparently come to believe that the Assistant United States Attorney in charge of the case was prepared to indicate to the Court that, although satisfied with Diskin's cooperation, Gartner's cooperation left something to be desired. Gartner and his attorney thus concerned, approached Diskin and suggested a meeting in order to discuss the extent of Gartner's cooperation and the possibility of withdrawing his plea of guilty. Diskin agreed to the meeting and at his suggestion it was held in his apartment. With the permission of Diskin and the knowledge of the United States Attorney's office, but without the knowledge of Gartner or his attorney, Special Agent Jeffrey Hall of the BNDD was concealed in a closet in the apartment during the meeting and taped the entire conversation. Agent Hall later testified that the reason for the concealment was his suspicion of Bloom's motives in requesting the meeting with Diskin and his suspicion that Bloom would ask Diskin to lie about Gartner's cooperation.

The meeting was held as planned on May 30, 1973, and was attended by Diskin, Gartner and his attorney. The taped transcript indicates that the conversation in substance concerned the extent of Gartner's and Diskin's cooperation with the Government, the possibility of Gartner withdrawing his plea and the likelihood of Diskin testifying on behalf of Gartner if he went to trial. There was no discussion of any possible trial strategy other than the use of Diskin as a defense witness.

The trial was set down before Judge Stewart in September, 1974. Five days before the commencement of the trial, the Government notified Bloom of the existence of the tapes and afforded him an opportunity to hear them. While Gartner raised the issue of the propriety of the recordings prior to the trial, he agreed to dispose of the matter by post-trial motion and at the same time waived a jury trial.

At the trial Diskin testified as a Government witness that he was associated with Gartner in both the photography and narcotics business, that he and Gartner sold Baletti cocaine on three or four occasions, and that they supplied Baletti with an eighth of a kilogram of cocaine in July, 1972, for which he made a partial payment. He also testified that on July 10, 1972, he was with Gartner when he telephoned Baletti to arrange for the payment of the balance due for the eighth of a kilogram after Baletti sold it; and further, that thereafter both proceeded to the corner of Broadway and Canal Street for that purpose.

The transcript was first used at the trial by Bloom in his cross-examination of Diskin who testified that Bloom told both to get their stories "straight," and again in his cross-examination of Agent Hall who testified that Bloom became aware during the taped conversations that Gartner intended to lie about his cooperation. The only use of the transcript by the Government was to refresh Bloom's recollection on cross-examination as to his understanding of Gartner's cooperation after the May 30th meeting. While Gartner raised no objection to this use of the transcript, an objection to a

further attempt to use it to refresh Bloom's recollection was sustained.

After the guilty verdict had been returned by Judge Stewart, Gartner renewed his application with respect to the May 30th meeting by moving to set aside the verdict. The Court, in denying the motion, found that although the Government conceded that there had been an interference with the attorney-client relationship, it found that the taped conversations did not concern the facts of the case and that the use of the transcript in no way prejudiced Gartner, either at the trial or in the withdrawal of his plea.

## II

■ At the outset, it seems to us plain that there can be no valid claim that Gartner's Fourth Amendment rights were violated by Hall's recording in Diskin's apartment, since neither Gartner nor his attorney was in either's home, office or other protected place where he would have reason to rely upon privacy and security. Many incidents of electronic eavesdropping have been sustained in the past by the Court against constitutional challenge. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), provided the electronic device was not planted by an unlawful invasion of a constitutionally protected area. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). The real challenge presented here is addressed to the Government's interference with Gartner's Sixth Amendment rights to the effective assistance of counsel by Hall's secret electronic eavesdropping. Of course, we share the views expressed in *Hoffa v. United States*, 385 U.S. 293, 306, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Caldwell v. United States*, 205 F.2d 879 (D.C.Cir.

1953); *Coplon v. United States*, 191 F.2d 749 (D.C.Cir.1951), *cert. denied*, 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952), and other cases with respect to a surreptitious intrusion by a Government agent into the confidential relationship between lawyer and client and other similar tactics which "are beneath the high standards of professional conduct expected of government counsel." *United States v. Mosca*, 475 F.2d 1052 (2d Cir.), *cert. denied*, 412 U.S. 948, 93 S.Ct. 3003, 37 L.Ed.2d 1001 (1973). But there is a sharp distinction between those intrusion cases and a case where the defendant and his lawyer call upon a third person for a conference in the latter's apartment, even though that third person may have been indicted in the same indictment and both are planning to plead guilty.

The crux of this case is based upon the misplaced confidence by Gartner and his attorney Bloom on Diskin who was known to both to be cooperating with the Government. See *United States v. Gugliaro*, 501 F.2d 68, 74 (2d Cir. 1974); *United States v. Rosner*, 485 F.2d 1213, 1226–27 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *cf. Hoffa v. United States, supra*, 385 U.S. at 302, 87 S.Ct. 408. If Diskin had relied upon his memory and simply reported to the Government what Gartner and Bloom had said, no violation of Gartner's Sixth Amendment rights could be raised. See *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir.), *cert. denied*, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62 (1958); *United States v. Andreadis*, 234 F.Supp. 341, 345 (E.D.N.Y.1964). For constitutional purposes, we see no difference if instead of immediately reporting the results of the meeting, Diskin had carried with him electronic equipment upon his person which simultaneously recorded the conversation. Gartner seems to rely upon the dissent in *Lopez* which treated the miniphone as an additional and independent auditor,[3] which concept,

---

3. The *Lopez* dissent distinguished the case of an informer without an electronic device and one with such a device, on the ground that instead of one informer, the miniphone added another independent informer whose mechanical recording differed from the credibility of a live witness and hence its presence violated the Fourth Amendment.

however, was rejected by the majority. In this case the electronic device instead of being upon Diskin's person, was placed upon Hall's person who, unknown to Gartner and Bloom, was concealed in a closet in Diskin's apartment. While this was a step further removed from the ordinary practice in such eavesdrop cases and was adopted for reasons not apparent to us, we believe that this methodology raises no additional or new problems except perhaps the added advantage that might be available to the Government by Hall's corroboration.

Gartner most vigorously presses for a dismissal under the so-called *per se* rule, claiming an offensive interference with his attorney-client relationship in violation of his Sixth Amendment rights. When conduct of a Government agent touches upon the relationship between a criminal defendant and his attorney, such conduct exposes the Government to the risk of a fatal intrusion and must be accordingly carefully scrutinized. The *per se* rule may result in dismissal of the indictment or a reversal. It has been applied in the past to the Government's intrusion upon the attorney-client relationship of a defendant where that conduct has been an offensive interference with the defendant's rights without any justification. The *per se* rule represents a moral as well as a legal condemnation of such egregious and unequivocal conduct for which sanctions are imposed against the Government as punishment regardless of the defendant's guilt. *United States* v. *Rosner, supra* ; *Hoffa* v. *United States, supra.* Such conduct was found in *Coplon* v. *United States, supra* (wiretap conversations); *Caldwell* v. *United States, supra* (a planted informer in the defense camp); *United States* v. *Rispo,* 460 F.2d 965 (3d Cir. 1972), and *United States* v. *Lusterino,* 450 F.2d 572 (2d Cir. 1971), (dummy defendants tried with other defendants). While this Court has never adopted the *per se* rule of dismissal, it has in a most recent case cautioned that "if circumstances warranted it we would not

shrink from such a result." *United States* v. *Rosner, supra,* 485 F.2d at 1228.

Where, however, the conduct of the Government has not been so manifestly and avowedly corrupt, the courts have applied a different and a less rigid rule which attempts to measure the harm or prejudice, if any, to the defendant rather than punish the prosecutor by freeing the defendant. *United States* v. *Arroyo,* 494 F.2d 1316 (2d Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), (Government informant mistakenly indicted as co-defendant); *United States* v. *Rosner, supra,* 485 F.2d at 1227–28, (co-defendant decides to cooperate with the Government); *United States* v. *Brown,* 484 F.2d 418 (5th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), (telephone conversations of incarcerated defendant monitored by jail officials for security reasons); *United States* v. *Mosca, supra,* (co-defendant cooperating with the Government); *cf. Taglianetti* v. *United States,* 398 F.2d 558 (1st Cir. 1968), *aff'd per curiam,* 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969), (auditing of attorney-client telephone conversation on unrelated case); *United States* v. *Lebron,* 222 F.2d 531 (2d Cir.), *cert. denied,* 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955), (presence of Government informant at pretrial meeting where no trial strategy discussed); see *United States ex rel. Cooper* v. *Denno,* 221 F.2d 626 (2d Cir.), *cert. denied,* 349 U.S. 968, 75 S.Ct. 906, 99 L.Ed. 1289 (1955), (police officer seated near counsel table for security reasons). We find no circumstance in this case justifying the application of the *per se* rule. Indeed, we find no actual intrusion upon the confidential attorney-client relationship between Gartner and Bloom arising out of the betrayal by Diskin. Gartner and his attorney sought this meeting with Diskin and agreed that it might be held in Diskin's apartment with full knowledge that he was cooperating with the Government. By so doing, they did not rely upon any confidential relationship between the

two as attorney and client but instead with their eyes open took the risk that the suspected colleague might be wired for sound or might otherwise provide for a recording in his apartment.[4]  *United States v. Tellier, supra,* 255 F.2d at 447; *United States v. Rosner, supra,* 485 F.2d at 1226–27; *cf. United States v. Gugliaro, supra,* 501 F.2d at 74.

While we need go no further, it is relevant to note that there is no evidence that Gartner suffered any prejudice as a result since no trial strategy was discussed and the subject matter concerned the possibility of his withdrawal of his guilty plea and the nature and extent of his cooperation.  After Judge Stewart permitted Gartner to withdraw his plea and after the subsequent trial, he found that the recorded conversations did not concern the facts of the case.  See *Taglianetti v. United States, supra.*

Affirmed.

---

4. *Bloom's awareness of the risks inherent in the situation is made clear by his apparently* joking reference to "bugs" during the recorded conversation (Government Appendix p. 37a).