UNITED STATES of America, Appellee,

v.

Alfred FAYER, Appellant.

No. 456, Docket No. 77–1389.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1977.

Decided March 27, 1978.

---

1. Angeles and Newman are litigating their differences in the California courts.

Otto G. Obermaier, New York City (Martin, Obermaier & Morvillo, Carolyn H. Henneman, New York City, of counsel), for appellant.

Ronald DePetris, Sp. Asst. U. S. Atty., Brooklyn (David G. Trager, U. S. Atty. for the Eastern District of New York, Harvey M. Stone and David S. Gould, Asst. U. S. Attys., Brooklyn, of counsel), for appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BARTELS,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment convicting appellant on four courts of perjury. It is the last chapter of the sad story of a lawyer whose zeal on behalf of his clients led him into areas of such doubtful propriety that he himself was charged with complicity in his clients' wrongdoing. Although he successfully defended himself against these accusations, the jury below found that he perjured himself in the process. Finding no reversible error, we affirm the judgment of conviction.

The clients' misdeeds are described in *United States v. Bernstein,* 533 F.2d 775 (2d Cir., *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976), and the lawyer's involvement is discussed in *United States v.*

*Fayer,* 523 F.2d 661 (2d Cir. 1975). A brief recapitulation will suffice. The clients, Harry and Rose Bernstein and their wholly owned company, Eastern Service Corporation, were convicted of securing false F.H.A. appraisals for mortgages which they owned and serviced by bribing F.H.A. appraisers, one of whom was Edward Goodwin. Prior to indictment, the Bernsteins and appellant Fayer met with Goodwin and attempted to convince him that he should not give any information to the grand jury which was investigating the Bernsteins' activities. Unbeknown to them, Goodwin had already agreed to cooperate with the Government, and the entire conversation was tape-recorded by a device concealed on Goodwin's person.

A fair reading of the transcript of the recorded conversation establishes clearly that both the Bernsteins and Fayer repeatedly urged Goodwin not to talk before the grand jury. They also urged Goodwin to discharge his attorney, who had recommended that Goodwin cooperate with the Government, and replace him with another attorney who would be paid by the Bernsteins. Finally, the Bernsteins, with Fayer's apparent approval, offered Goodwin a job in their Florida office if his refusal to cooperate cost him his F.H.A. job.

Fayer was originally indicted for wrongfully endeavoring to influence a witness, 18 U.S.C. § 1503, and for aiding and abetting in the attempted bribery of the witness, 18 U.S.C. §§ 2 and 201(d). Following a nonjury trial before Judge Weinstein in the Eastern District of New York, Fayer was acquitted on both accounts. The basis for Judge Weinstein's holding on the first count was that, although Fayer was motivated in part by his desire to protect the Bernsteins, there was a substantial doubt as to whether he was not also attempting to advise Goodwin as a lawyer. With regard to the second count, Judge Weinstein found that, although Fayer "did aid and abet the Bernsteins" and that it was difficult to believe that Fayer did not know that the

---

* Honorable John R. Bartels, Senior District Judge of the United States District Court for the Eastern District of New York, sitting by designation.

Bernsteins "were using him to aid and abet them in their scheme", a reasonable doubt nonetheless existed as to whether Fayer acted with the wilful intent to corrupt.[1] Appellant was subsequently indicted again, this time on four counts of perjury.

Appellant contends that his convictions on three of the four perjury counts must be reversed because he was immune from prosecution on these counts under the doctrine of collateral estoppel. His post-trial motion addressed to the fourth count specifically excluded collateral estoppel as a ground for dismissal.[2] Because this count stands separate and apart in this respect, it will be discussed first.

## COUNT IV

The transcript of the recorded conversation shows that in attempting to convince Goodwin to discharge his attorney, the Bernsteins and Fayer made the following statements:

Fayer: I would say to your friend. And this is the right thing, he spent a little bit of his time. I'd give him a check. I don't know how much time he spent. A hundred, two hundred dollars. Whatever it is. Give him a check. Tell him you'll think it over and so forth, and just sit tight. If you're called at that point . . .

Rose

Bernstein: But tell him not to do any investigating (inaudible)

Harry

Bernstein: Don't do any investigating on his own, don't do anything. Just don't worry.

Fayer: Please stay out of it. Please.

During the first trial, Judge Weinstein stated to Fayer that there were numerous references in the transcript to having Good-

win's attorney stop an investigation. And then, referring to the above quoted statement by Fayer, Judge Weinstein asked, "Whom were you addressing this remark to, Mr. Fayer?" Appellant's reply was " 'Please stay out of it' was Rose Bernstein. She had no right to tell him not to do any investigation." Count IV of the perjury indictment, after reciting the foregoing facts, charged that appellant's declarations were false in that appellant was addressing the remark "Please stay out of it" to Goodwin to tell his attorney and was not addressing it to Rose Bernstein.

During the prosecutor's summation, he told the jury that after listening to the playing of the tape, his interpretation of what Fayer had said was "Please stay out of it completely." Upon objection by appellant's counsel, based upon a prior stipulation as to the accuracy of the transcript, the Court stated that the tape was in evidence and the jury could be asked to listen and make its own determination as to the actual conversation. Appellant now contends, first, that the prosecutor's statement amounted to an impermissible amendment of the indictment, and second, that the alleged misstatement was not material. We disagree as to both contentions.

■ The gravamen of the perjury charge in count IV was the response made by appellant when the court asked, "Whom were you addressing this remark to, Mr. Fayer?" Appellant's response was " 'Please stay out of it' was Rose Bernstein." If the remark was not addressed to Rose Bernstein, this answer was clearly false. Remarks which preceded this answer were included in the indictment merely to place the perjurious statement in context. *See United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir.), *cert. denied*, 426 U.S. 935, 96

---

1. The Government appealed the acquittal on the obstruction of justice charge, contending that Judge Weinstein had misconstrued the law, but this Court held that the judgment of acquittal was not appealable under 18 U.S.C. § 3731. *Fayer*, 523 F.2d at 664.

2. Appellant's counsel said: "With respect to count four, I don't base the motion on collateral

estoppel but I base it on the fact that the jury was permitted to consider a charge which was not in the indictment." Counsel's failure to include collateral estoppel in this motion was not ill-considered. Judge Weinstein made no findings on the first trial with reference to the matters charged in the fourth count.

S.Ct. 2647, 49 L.Ed.2d 386 (1976). Whether a particular word in a contextual remark was "please" or "completely" is unimportant on the facts of this case. *See United States v. McGrath,* 558 F.2d 1102, 1105 (2d Cir. 1977), *cert. denied,* —— U.S. ——, 98 S.Ct. 1239, 55 L.Ed.2d 765 (Feb. 21, 1978); *United States v. Cirami,* 510 F.2d 69, 72–73 (2d Cir.), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975).

█ The district court was correct in finding that this misstatement was material. The test of materiality is whether the false testimony was capable of influencing the fact finder in deciding the issues before him. *United States v. Gugliaro,* 501 F.2d 68, 71 (2d Cir. 1974). One of the issues to be decided by Judge Weinstein was whether Fayer knew that the Bernsteins had been guilty of wrongdoing. *Fayer,* 523 F.2d at 664. Fayer's urging that Goodwin's lawyer be instructed to stay out of the matter was an indication that Fayer knew that the Bernsteins had been guilty of criminal conduct and that further investigation by Goodwin's attorney might uncover it.

## COLLATERAL ESTOPPEL AND THE REMAINING COUNTS

█ The acquittal of a defendant following a trial on criminal charges does not bar his subsequent conviction for perjury committed during the course of the trial. *Gugliaro,* 501 F.2d at 70–71; *United States v. Gremillion,* 464 F.2d 901, 906 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972); *Adams v. United States,* 287 F.2d 701 (5th Cir. 1961). "To hold otherwise . . . would be to put a premium on perjury and to make immunity from punishment for perjury rest on success in commission of the crime." 70 C.J.S. Perjury § 26 at 492 (footnotes omitted).

█ It is only when an issue of ultimate fact or an element essential to conviction has once been determined by a final judgment in a criminal case that the same issue cannot be relitigated. *United States v. Cala,* 521 F.2d 605, 607–08 (2d Cir. 1975); *Gugliaro,* 501 F.2d at 70. Moreover, the burden is on the defendant to establish that

the verdict in the prior trial necessarily determined in his favor the issue which he now contends should not be considered. *United States v. King,* 563 F.2d 559, 560 (2d Cir. 1977). Because Judge Weinstein made specific findings, it is possible to determine with some accuracy the factors which entered into his decision.

## COUNT I

█ The first count charged appellant with perjury for testifying falsely that he had advised Goodwin not to cooperate with the F.B.I. when he had in fact advised Goodwin not to testify before the grand jury. Corrupt advice under 18 U.S.C. § 1503 must relate to an investigation by the grand jury, not the F.B.I. *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir. 1972). Our reading of the transcribed conversation at the time we decided *Fayer,* 523 F.2d at 662, satisfied us that appellant was endeavoring to convince Goodwin not to go before the grand jury and not to talk. Our re-reading of the transcript on this appeal has fortified us in this conviction. More importantly, Judge Weinstein made this specific finding on the first trial.

█ Appellant was not acquitted by Judge Weinstein because his advice related to the F.B.I., but because there was substantial doubt as to whether it was given with a corrupt motive. The facts determinative of the issue raised by count I were found against appellant on the first trial, and the government was not estopped from prosecuting him on this charge on the second trial. *United States v. Williams,* 341 U.S. 58, 64 n.3, 71 S.Ct. 595, 95 L.Ed. 747 (1951).

## COUNT II

█ At the conclusion of the first trial, Judge Weinstein stated that he found "a reasonable doubt based upon the testimony of the defendant himself that he truly believed the Bernsteins' innocence." Count II charges that appellant testified falsely when in reply to a question by the court he denied that the parties to the recorded con-

versation were discussing "accusations and allegations" that the Bernsteins had paid bribes to Goodwin.

It is clear from the transcript that the parties were discussing "accusations and allegations" that Goodwin took money from the Bernsteins.[3] That appellant might have believed the Bernsteins innocent of these charges did not indicate in the slightest that the accusations had not been made. Indeed, if Judge Weinstein was not convinced that the Bernsteins had been accused of bribery, his finding that Fayer believed them to be innocent was meaningless. Innocent of what? The Bernsteins were not being accused of murder or assault; they were being accused of bribery. Judge Weinstein's finding that Fayer believed them to be innocent does not gainsay that the accusation was made and discussed; to the contrary, it confirms it. There was no estoppel barring appellant's conviction on count II.

## COUNT III

 During the course of the recorded conversation, Harry Bernstein said to Goodwin, "If you say anything, it blows every-thing." In response to questions by Judge Weinstein, Fayer testified that he believed this to mean that if Goodwin said anything, he, Goodwin, would be finished and that Bernstein was not referring to himself when he made this statement. Count III charges that this answer was false because Fayer knew and believed that Bernstein was referring to himself, his wife and his corporation.

The jury below concluded the obvious—that Bernstein was referring to himself and that Fayer knew it. Whether they were estopped from reaching this conclusion by Judge Weinstein's findings on the first trial is not so clear. Judge Weinstein found that one of Fayer's motives in talking to Goodwin was "to protect the Bernsteins." At the same time, however, he found that there was a reasonable doubt as to whether Fayer believed the Bernsteins to be innocent. It is difficult to reconcile these two findings unless the first is interpreted to mean that Fayer was attempting to assist the Bernsteins in avoiding indictment, not conviction. So construed, there is nothing in Judge Weinstein's findings which estopped the Government from prosecuting

---

3. The following excerpts from the recorded conversation are illustrative:

> Rose Bernstein: (Inaudible) But, uh, we have testimony that you took money from the Bernsteins.
> Fayer: Yes. No.
> Rose Bernstein: U, I and I, and everything. Don't you think at that point that Ed should have said, uh, testimony that's not true. Shouldn't he have said that?
> Fayer: Right. Should have said it's a lie, but, however, what's the difference.
> \* \* \* \* \* \*
> Fayer: Let's assume, for argument's sake, they get hold of "X".
> Goodwin: Yeah.
> Fayer: Some other appraiser.
> Goodwin: Yeah.
> Fayer: After they get him he admits it.
> Goodwin: Uh huh.
> Fayer: Now he admits it so they tie him in. But that doesn't affect you. The only one that can affect you is you.
> \* \* \* \* \* \*
> Rose Bernstein: Al, isn't it true, in order, in order to, in order to prove certain things strictly, wouldn't there be a third party to see.

> Fayer: No. You see the thing is this. Not necessarily a third party. We could happen to have a check.
> Rose Bernstein: You'd have to have a check.
> Fayer: You'd have to have, uh, the bank deposits. You would have to have, uh . .
> Rose Bernstein: Yeah, the books, to to explain.
> Goodwin: Corroboration.
> Fayer: Yes, corroboration.
> Goodwin: Some kind of corroboration.
> Fayer: This is why what, when you, you said to me, at the outset what really started it, that you were told, that they made an accusation is sufficient. Not in the United States of America. Not here.
> \* \* \* \* \* \*
> Fayer: For Christ sake I says look, I says, this is something that has to be proven and has to be established. It is not that simple, Ed. Sounds great, But they're gonna need all sorts of (inaudible) at this time. So don't be so goddamned nervous.

Fayer on count III, and the district court did not err in so holding.[4]

## APPELLANT'S OTHER CONTENTIONS

■ Appellant asserts error because of several evidentiary rulings by the trial court, but we find no basis in them for reversal. Goodwin was permitted to testify concerning his prior relationship with the Bernsteins and about a conversation he had with them. A recording of this conversation was admitted into evidence. This proof, which the jury was permitted to consider under appropriate limiting instructions, was properly received as background for the recorded conversation which was in issue. *United States v. Ruggiero*, 472 F.2d 599, 607 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973). Moreover, there was evidence that appellant knew what had transpired during the prior recorded conversation and it therefore bore directly on the issue of his intent.

■ The trial court did not abuse its discretion in allowing testimony by Goodwin as to what several statements by Fayer and Harry Bernstein meant to him. *United States v. Cioffi*, 493 F.2d 1111, 1116 (2d Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974); *Wiley v. United States*, 257 F.2d 900, 908 (8th Cir. 1958). The court instructed the jury that the issue was not what Goodwin understood the statements to mean, but what the speakers actually meant and intended. Assuming for the argument that the admission of this testimony was error, the meaning of what Fayer and Bernstein said is so clear from the overall context of the recorded conversation that the error was harmless.

The judgment of conviction is affirmed.

---

**4.** Because the district court suspended sentence on counts I, II and III with a one-month period of probation and there was no prejudicial spillover between counts, this is a case in which the concurrent sentence rule could properly have been applied to count III. *United States v. Mejias*, 552 F.2d 435, 444–45 (2d Cir. 1977).