**UNITED STATES of America,**
**Appellant,**

v.

**Alfred FAYER, Appellee.**

**No. 1191, Docket 75–1147.**

United States Court of Appeals, Second Circuit.

Argued Aug. 11, 1975.

Decided Sept. 24, 1975.

Ronald DePetris, Asst. U. S. Atty. (David G. Trager, U. S. Atty., for the Eastern District of New York, Gary A. Woodfield, David S. Gould, Brooklyn, N. Y., on the brief), for appellant.

Jack Korshin, Mineola, N. Y., for appellee.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

 This appeal is by the Government under 18 U.S.C. § 3731. It is from a judgment of acquittal following a bench trial[1] in the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge*, with special

1. Jury trial was waived in writing with the approval of the court and consent of the United States, pursuant to Fed.R.Crim.P. 23(a).

findings of fact pursuant to Fed.R. Crim.P. 23(c). The charge was endeavoring to influence a witness in violation of 18 U.S.C. § 1503.[2] The Government claims that the trial judge misconstrued the statute to require that the corrupt motive of a defendant be predominant or exclusive and that the court's special findings permit reversal under 18 U.S.C. § 3731 as construed in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). The appellee, Alfred Fayer, an attorney, claims that under *Jenkins* there were insufficient findings to support a verdict of guilty, so that any remand requiring further findings would result in double jeopardy by virtue of the Fifth Amendment; appellee asserts, moreover, that Judge Weinstein correctly construed the statute. Despite a very able presentation by the Government we are constrained to interpret the judge's findings as sufficiently ambiguous to prevent remand under *Jenkins* and therefore affirm. We are required to do so even though we consider that he very probably misconstrued the statute.

Fayer was attorney for Harry and Rose Bernstein, principals of Eastern Service Corporation, and attorney for and a director of that corporation which, with the Bernsteins, was a target of an investigation into Federal Housing Authority corruption.[3] One Edward Goodwin, an FHA appraiser who claimed to have received bribes from the Bernsteins or their corporation, had agreed to cooperate with the Government. Goodwin, equipped with a recording device, met with the Bernsteins on February 8, 1972, and with the Bernsteins and Fayer on February 9, 1972. The tape of the February 9 conversation is the basis for the charge appealed upon; it appears to us to disclose Fayer endeavoring to convince Goodwin not to go before the grand jury and not to talk.[4] Fayer's defense below was that he was trying to give legal advice to Goodwin (although he was also concerned with protecting the Bernsteins and Eastern Service) and in the taped conversation he expressed shock and amazement at the advice given to Goodwin by the latter's "inexperienced" and not "qualified" lawyer who had suggested that cooperation with the Government was a possible alternative for Goodwin to choose. Fayer attempted to induce Goodwin to drop his attorney in favor of Fayer's counsel below and on this appeal, whose fees chargeable to Goodwin were to be paid by the Bernsteins. Fayer further indicated approval of the Bernsteins' offer to Goodwin to work in their Florida office in the event that Goodwin lost his FHA job (which with the offer to pay attorney's fees was the foundation for the bribery count, note 2 *supra*).

Thus the essential facts include Fayer's endeavoring to influence a prospec-

---

**2.** 18 U.S.C. § 1503 provides:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror . . . or corruptly or by threats or force . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

A charge of offering a bribe to a witness (18 U.S.C. §§ 201(d), 2) was consolidated for trial with the "influencing a witness" charge, but resulted in a judgment of acquittal as to which the Government withdrew its appeal.

**3.** The Bernsteins and Eastern Service Corp. were subsequently convicted of conspiracy (18 U.S.C. § 371) and bribery (18 U.S.C. § 201) and Harry Bernstein and the corporation of false statement offenses (18 U.S.C. § 1010). Appeals from their convictions are sub judice in this court.

**4.** The tape contains numerous comments by Fayer to Goodwin of which these are only examples:

"You're gonna get hurt. For no reason at all. You're foolish . . . [f]oolish to, to hurt yourself."

". . . if you do talk you're finished anyway."

"This is the thing. Now the answer is here is what do you gain? And that, that's the real, that the real $64,000 question. What do you gain? You can only lose. You can't gain."

tive witness, when the latter's counsel was not present, not to testify voluntarily in a grand jury investigation in which Fayer's clients were targets. The trial judge nevertheless found as follows:

> I have decided that under no view of the law and the facts can I determine beyond a reasonable doubt that the defendant is guilty. There is a reasonable doubt necessarily because I must and do credit the defendant's testimony with respect to what the Bernsteins said to him. . . .

> As far as Goodwin is concerned, the transcript clearly reveals in a sense he led Mr. Fayer on to believe what the Bernsteins had apparently told him and that is that Goodwin wanted legal views from Fayer with respect to whether he should continue to rely upon this attorney or whether he should get a new attorney.

The judge also refused to find that Fayer did endeavor to influence Goodwin to take the Fifth Amendment before the grand jury, saying that "what he did was attempt to . . . influence him not to go voluntarily before the grand jury." The judge added, however, "I think that's the equivalent."

█ It is Judge Weinstein's findings on motive, when viewed in the light of his other findings and statements, which create the critical difficulty for the Government in its appeal. Judge Weinstein found that the motive "to protect the Bernsteins" was "one of the motives, clearly" but not "the only motive"; he failed in respect to a specific question of the prosecutor to respond to whether it was "the primary motive." The judge then went on to say (mistakenly on his law, the Government asserts),

> if the whole thing were set up to protect the Bernsteins rather than Goodwin, I would have found him guilty, but I do not think that, considering the whole matter, there is a very substantial doubt about whether he was not also concerned with Goodwin in good faith as a lawyer, although a lawyer acting so foolishly as to almost

defy belief. But being foolish is not a crime.

It is unnecessary here to discuss 18 U.S.C. § 1503, note 2 *supra*, at length. Suffice it to say under our own *United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974), one who with corrupt motive advises a witness to claim the Fifth Amendment privilege violates the statute. *See also Cole v. United States*, 329 F.2d 437 (9th Cir.), *cert. denied*, 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). The Government urges strenuously that analogous cases in the treason area hold that evidence of a bad motive or purpose (to give aid and comfort to the enemy) is sufficient to sustain a conviction even though a good motive is also present. *Haupt v. United States*, 330 U.S. 631, 641–42, 67 S.Ct. 874, 91 L.Ed. 1145 (1947); *Stephan v. United States*, 133 F.2d 87, 99 (6th Cir.), *cert. denied*, 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148 (1943). *But see United States v. Cullen*, 454 F.2d 386, 391–92 (7th Cir. 1971) (evidence of good motive may be admissible to offset evidence of bad motive where motive an element of crime). Again, the Government points out, even if violation of the federal law is a secondary or minor purpose of a conspiracy, federal conspiracy may nevertheless be proven. *Anderson v. United States*, 417 U.S. 211, 226, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *Ingram v. United States*, 360 U.S. 672, 679–80, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). Here, the Government says, and it is difficult for us not to agree, that the "good" motive (giving legal advice to a man who already had a lawyer, in the latter's absence) was outweighed by the "bad" motive (helping Eastern Service and the Bernsteins to cover up crimes to avoid indictment). But our problem is that the trial judge did not find this; rather he found that "under no view of the law and the facts can I determine beyond a reasonable doubt that the defendant is guilty."

The *Jenkins* test is whether it is "clear that the court, in its findings of fact and

conclusions of law, expressly or even impliedly found against the defendant on all issues necessary to establish guilt under even the Government's formation of the applicable law." *United States v. Jenkins*, 420 U.S. at 367, 95 S.Ct. 1006. Put another way, the question is whether "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand." *Id.* at 370.

The strongest finding the Government procured from Judge Weinstein is "I find that that was one of the motives, clearly [to protect his clients, the Bernsteins]." There are two reasons, however, that this should not be read to constitute a finding that implicitly "one of his motives was corrupt under § 1503." First, the finding is ambiguous as to whether such protection was improper in the mind of the fact-finder or not, *i. e.*, whether it was innocent protection of a client or a cover-up of crimes of the clients known to Fayer. Second, the finding of protection of the Bernsteins as a motive is coupled with other statements by the court of belief in the defendant's testimony,[5] including a denial by the court that the interpretation of "corruptly" has affected the decision: ". . . under any definition of 'corruptly' this result would be required."

■■■ It is conceivable that Judge Weinstein as a fact-finder might have made the special finding for the Government that "one of the defendant's motives was corrupt under the statute, namely that of aiding his clients in covering up their crimes." But in light of the judge's other findings and statements which explicitly contradict such an implicit reading of the findings as to motive, we are forced to conclude that findings "against the defendant on all issues necessary to establish guilt" as required by *Jenkins* are not at all "clear." Rather, on a remand, additional findings of fact would have to be made, even assuming the Government's view of the law is correct. It would have to be found that protection of the Bernsteins and Eastern Service Corp. itself was "corrupt," *i. e.*, that Fayer was acting with knowledge of crimes committed, as opposed to giving innocent counsel. *Cf. McNeal v. Hollowell*, 481 F.2d 1145 (5th Cir. 1973), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974) (defendant's lawyer entitled to suggest to witness and witness's counsel that witness might want to exercise Fifth Amendment privilege). At the very least the factual finding that Fayer endeavored to influence Goodwin "corruptly" would have to be made. This is a mixed question of law and fact if not one of fact alone; as such, absent it, on remand, the double jeopardy clause would apply. *Jenkins, supra.* The judgment of acquittal is therefore not appealable under 18 U.S.C. § 3731.

Appeal dismissed.

---

5. Judge Weinstein's statements at the court session with special findings include the following, as noted in the text *supra:*

I have decided that under no view of the law and the facts can I determine beyond a reasonable doubt that the defendant is guilty, there is reasonable doubt necessarily because I must and do credit the defendant's testimony with respect to what the Bernsteins told him.

Judge Weinstein did, however, direct the United States Attorney to forward the transcript and record of the trial to the appropriate bar association disciplinary authorities for action.

Regarding the bribery count, note 2. *supra*, Judge Weinstein stated:

You can't find a lawyer guilty of crimes because he is in good faith advising a client who's going ahead and continuing to commit other independent crimes. I just don't find beyond a reasonable doubt that this defendant was engaged in a conspiracy with the Bernsteins.