**UNITED STATES of America, Plaintiff,**

v.

**George LYNCH and Christopher Moscinski, Defendants.**

95 Civ. 9223 (JES).

United States District Court, S.D. New York.

Jan. 10, 1997.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, for Plaintiff; Martin J. Siegel, Nicole Labarbera, Assistant United States Attorneys, of Counsel.

John J. Broderick, Syosset, New York, for Defendant George Lynch.

---

Gabriel P. Kralik, Fish & Richardson, P.C., New York City, for Defendant Christopher Moscinski.

A. Lawrence Washburn, Jr., New York City, for Defendants George Lynch and Christopher Moscinski.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

The Government brings the above-captioned criminal contempt proceeding against defendants George Lynch and Christopher Moscinski. For the reasons that follow, the Court finds defendants not guilty.

## BACKGROUND

The following facts, as set forth in a stipulation signed by the parties, are undisputed. *See* Stipulation ("Stip.") (undated) attached to Government's Letter Brief dated November 5, 1996, and submitted to the Court at the Trial held on October 15, 1996.

On February 23, 1996, the Court entered a permanent injunction in *United States v. Lynch and Moscinski*, 95 Civ. 9223 (JES), which provided:

> IT IS HEREBY ORDERED that defendants George Lynch and Christopher Moscinski, their agents, and all individuals acting in concert with defendants or their agents, are permanently enjoined from violating, or aiding and abetting the violation of, the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248, in any way, including but not being limited to:
>
> 1. impeding or obstructing automotive or any other form of ingress into, or egress from, the Women's Medical Pavilion in Dobbs Ferry, New York; and
> 2. attempting to take—in inducing, encouraging, directing, aiding, or abetting in any manner others to take—any of the actions set forth in subparagraph 1 of this order.

Order Imposing Permanent Injunction dated February 23, 1996.

On August 24, 1996, at approximately 7:30 a.m., officers from the Dobbs Ferry Police Department were called to the Women's Medical Pavilion (the "Clinic") in Dobbs Ferry, New York, where Lynch and Moscinski were seated in the Clinic's driveway. Stip. at 2. At approximately 7:50 a.m., after observing several vehicles unsuccessfully attempt to enter the parking lot, officers warned Lynch and Moscinski that they were violating the law, and that if they did not leave the area immediately, they would be arrested. *Id.* Lynch and Moscinski acknowledged the warning and remained seated. *Id.* The officers then arrested Lynch and Moscinski, who upon being arrested, went "limp" and were carried to a bus for transport to the police station. *Id.*

Lynch and Moscinski acknowledged that at the time they sat in the Clinic's driveway they knew of the Court's injunction, and knew that they were enjoined from "'impeding or obstructing automotive or any other form of ingress into, or egress from, the [Clinic].'" Stip. at 2.

On September 6, 1996, the Government charged Lynch and Moscinski with contempt of the Court's February 23, 1996 Order Imposing Permanent Injunction. *See* Notice of Charge.

On October 15, 1996, the Court held a trial and heard testimony from Lynch and Moscinski. The Court also viewed and received into evidence a video-tape recording of defendants' actions at the Clinic the morning of the incident.[1]

## DISCUSSION

Because the parties agree to the facts as set forth in their stipulation, the Court deems those facts established and incorporates them into its findings.

■ The Court further finds, and it has not been disputed, that Lynch and Moscinski

---

1. On August 24, 1996, George Lynch was held in civil contempt of the Court's Order Imposing Permanent Injunction based on his actions to block ingress to and egress from the Clinic on April 3, 1996. Pursuant to 18 U.S.C. § 248(c)(2)(B), the Government requested statutory damages in the amount of $5,000, which the Court denied. *See* Order Holding Defendant in Civil Contempt and Denying Plaintiff's Request for Statutory Damages dated August 24, 1996.

acted out of a sense of conscience and sincere religious conviction. Any further inquiry into the validity of their beliefs is foreclosed by the First Amendment. *See United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 863–64, 13 L.Ed.2d 733 (1965) (in connection with section 6(j) of the Selective Service Laws, the truth of a belief is not open to question, rather, the question is whether the objector's beliefs are truly held); *Jolly v. Coughlin,* 76 F.3d 468, 476 (2d Cir.1996) (court may only inquire whether claimant sincerely holds a particular belief and whether that belief is religious in nature); *International Soc'y For Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430, 439 (2d Cir. 1981) (court will investigate adherent's sincerity and will invoke free exercise analysis where belief is asserted and acted upon in good faith).

The Court asked the parties to brief whether it is a defense to a criminal contempt charge that a person act with a sincere religious belief that he is acting to save a human life. The Government, in its letter brief to the Court, cites a variety of cases from other circuit courts holding that abortion protesters, as a matter of law, are not entitled to a necessity defense. *See* Government's Letter Brief dated November 5, 1996, citing, *inter alia, United States v. Turner,* 44 F.3d 900, 901–03 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995) (holding, as a matter of law, that necessity defense does not apply to abortion protesters who violate preliminary injunction); *Zal v. Steppe,* 968 F.2d 924, 929–30 (9th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 582 (1992) (trial court's evidentiary orders excluding necessity, defense of others, and mistake of fact defenses did not violate 6th or 14th Amendments); *Roe v. Operation Rescue,* 919 F.2d 857, 869–70 (3d Cir.1990) (affirming exclusion of medical evidence regarding fetuses which would have been used to support justification defense in civil contempt charge); *Northeast Women's Center, Inc. v. McMonagle,* 868

F.2d 1342, 1350–52 (3d Cir.), *cert. denied,* 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989) (affirming exclusion of evidence relating to justification defense to civil RICO and state trespass claims).[2]

There is no authority in this Circuit dealing precisely with this issue. In one state case a court did instruct a jury that the defendants could present and argue New York's justification statute, New York Penal Law § 35.05, so long as the jury found that the medical group at issue was about to perform other than first trimester abortions. *See People v. Archer,* 143 Misc.2d 390, 537 N.Y.S.2d 726 (1988). The court reasoned that a jury is free to decide, under New York's justification statute, whether abortions are immoral " 'injuries to be avoided' " and whether " 'the urgency of avoiding such injuries clearly outweighs the desirability of avoiding injuries such as Trespassing and Resisting Arrest,' which the criminal statutes in issue" were designed to prevent. *Id.* 537 N.Y.S.2d at 732. The court further determined that New York's justification statute could not be asserted for conduct directed towards first-trimester abortions because such state regulation would be preempted by *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *Id.* at 733–34.

Two other state cases declined to apply New York's justification statute. *See People v. Bauer,* 161 Misc.2d 588, 614 N.Y.S.2d 871, 873 (1994) (finding the defense of justification under Penal Law § 35.05 does not apply in case of defendant who blocked door to doctor's office in attempt to persuade women not to have abortions and who was charged with trespass and resisting arrest); *People v. Crowley,* 142 Misc.2d 663, 538 N.Y.S.2d 146 (1989) (precluding justification or necessity defense for conduct directed towards legal abortions because the injury sought to be prevented has been awarded legal protection by the New York legislature and the United States Supreme Court).

---

**2.** It should be noted that a necessity defense is not synonymous with a justification defense. The former requires that there be no other means available to avoid committing the offense whereas the latter may require only a well-founded

objectively reasonable belief that an act is necessary to preserve human life. *See generally* La-Fave, Wayne R. and Austin W. Scott, *Criminal Law Second Edition,* §§ 5.4–5.8 (1986).

In this case, the record is unclear whether abortions beyond the first-trimester were performed in the Clinic at issue. Since abortions are legal in New York beyond the first trimester, *see* N.Y. Penal Law § 125.05 (McKinney 1987), there is a reasonable inference that the justification defense might be available in New York with respect to late abortions. It is interesting to note that the New York State Senate passed a bill in April, 1996, to ban partial birth abortions. *See* Ken Moritsugu, *NY Senate: Ban Some Abortions But 'Partial–Birth' Law Unlikely,* Newsday, May 1, 1996. Although the Assembly voted to shelve that bill, *see* Shannon McCaffrey, *Close Abortion Vote in Assembly Worries Abortion Rights Advocates,* The Associated Press Political Service, December 19, 1996, if anything, the parameters of the justification defense with respect to this issue may ultimately be enlarged.[3]

However, the Court need not resolve this issue because the Court finds beyond a reasonable doubt that neither Lynch nor Moscinski acted with the willfulness which criminal contempt requires. *See United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 659 (2d Cir.1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990) (criminal contempt sanctions may be imposed only if it is proven beyond a reasonable doubt that the contemnor willfully violated the specific and definite terms of a court order); *S.E.C. v. American Bd. Of Trade, Inc.,* 830 F.2d 431, 439 (2d Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988) (same).

In *United States v. Sisson,* 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), the Supreme Court addressed a fact situation in which a person who had refused to seek a conscientious-objector classification, also refused to submit to induction and was prosecuted for that offense. The defendant, Sisson, argued in pre-trial motions that the Vietnam War was immoral and that he did not feel he could, in good conscience, claim a conscientious-objector status, because he was not opposed to all wars but just opposed to that war. *Id.* at 271–75, 90 S.Ct. at 2120–22. The district court instructed the jury to determine whether Sisson's refusal to submit to induction was " 'unlawfully knowingly and willfully' done." *Id.* at 276, 90 S.Ct. at 2122.

After the jury found Sisson guilty, the district court set the verdict aside on a motion to arrest judgment, concluding that Sisson's sincere moral belief precluded his conviction for the offense charged. *Id.* at 277–78, 90 S.Ct. at 2123–24. The government unsuccessfully sought to appeal the decision on the ground that it was not an acquittal. *Id.* at 279–308, 90 S.Ct. at 2124–39. The Supreme Court rejected the government's argument holding that since the district court had gone outside the indictment and considered evidence at trial in concluding that Sisson's sincere moral belief precluded Sisson's conviction, it was in fact a judgment of acquittal that could not be appealed. *Id.*

■ In this case, the Court finds as a matter of fact that Lynch's and Moscinski's sincere, genuine, objectively based and, indeed, conscience-driven religious belief, precludes a finding of willfulness. Willful conduct, when used in the criminal context, generally means deliberate conduct done with a bad purpose either to disobey or to disregard the law. *See Black's Law Dictionary* (5th ed. 1979). That kind of conduct is not present here.

---

**3.** The Court is not persuaded by the Government's argument that there cannot or should not be any defense of justification or necessity merely because the conduct at issue *i.e.* abortion, is legal as a matter of positive law. Were a person to have violated a court order directing the return of a runaway slave when *Dred Scott* was the law, would a genuinely held belief that a slave was a human person and not an article of property be a matter the Court could not consider in deciding whether that person was guilty of a criminal contempt charge? And if so, what moral justification could be offered for trying government officials, including judges, for implementing the positive laws of Nazi Germany?

These considerations are made even more relevant because of recent events in Bosnia and because of present United States commitments to international treaties on human rights, which could conceivably, at some time, put United States positive laws relating to abortion and the judges who implement them at variance with and in violation of a future international consensus on that issue. *See* Minutes to the Second Circuit Judicial Conference, held in June, 1996 (to be published).

Although the Second Circuit, in a criminal contempt case involving a defendant who refused to testify as a trial witness after he had been immunized and directed to answer questions, rejected the argument that good faith reliance on advice of counsel negates willfulness, *see United States v. Remini*, 967 F.2d 754, 757 (2d Cir.1992), the Court is aware of no criminal contempt case where a court has rejected a sincere religious belief as a defense to a criminal contempt charge. *But see Smilow v. United States*, 465 F.2d 802, 804 (2d Cir.), *vacated*, 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215 (1972) (affirming judgment which rejected religious defense claim in context of civil contempt proceeding, which does not require willfulness); *see also State of New Jersey v. Chesimard*, 555 F.2d 63 (3d Cir.1977) (en banc) (Gibbons, Maris and Van Dusen, Judges, dissenting) (disagreeing with majority's decision not to reach merits of defendant's request that trial not be held on Fridays, a holy day, and finding that government objective, even of the highest order, will not justify the imposition of restraint upon free exercise of religion unless that objective cannot otherwise be achieved); *United States v. Fisher*, 571 F.Supp 1236 (S.D.N.Y.1983) (rejecting co-defendant's First Amendment interest in not having to attend trial on Fridays, a holy day, due to extraordinary circumstances of eight defendant trial of expected lengthy duration).

■ However, even assuming arguendo that the Court were satisfied that the Government's proof established the requisite willfulness, the Court would still find the defendants not guilty. The facts presented here both by sworn testimony and a videotape depicting an elderly bishop and a young monk quietly praying with rosary beads in the Clinic's driveway, clearly call for what Judge Friendly once referred to, in *United States v. Barash*, 365 F.2d 395, 403 (2d Cir. 1966), as that exercise of the prerogative of leniency which a fact-finder has to refuse to convict a defendant, even if the circumstances would otherwise be sufficient to convict. *But cf. Sparf and Hansen v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895) (outlawing practice of permitting counsel to argue to jury that it could return a verdict contrary to law).[4]

The Court has been cited to no authority by the parties that the Court, when it sits as a fact-finder, does not have that same prerogative of leniency and the Court's own research has disclosed none. Indeed, the policies which underlie that prerogative are

---

**4.** Indeed, that prerogative of leniency has for centuries proven most effective in both England and America in resisting attempts at government oppression, especially in cases involving free expression.

Most illustrative of that experience in American history is the trial of John Peter Zenger in 1735 on charges of seditious libel. Zenger, as editor and printer of the New York Weekly Journal, the first journal of political criticism in New York, criticized the newly appointed royal Governor of New York, William Cosby, for seeking to remove trials by juries at his pleasure. Three grand juries refused to indict Zenger, despite his evident guilt, which ultimately led New York's Attorney General to file an information. At trial, Zenger was defended by Andrew Hamilton of Philadelphia, widely regarded as the foremost lawyer in the colonies. Hamilton conceded that Zenger published the papers at issue, but argued to the jury that truth was a defense, although under the law at that time it was not. The Chief Justice properly instructed the jury as to the law, but it acquitted Zenger. *See* James Alexander, *A Brief Narrative of the Case and Trial of John Peter Zenger* (Stanley N. Katz ed., 2d ed., The Belknap Press of Harvard University Press, Cambridge, Massachusetts 1972); Albert W. Alschuler and Andrew G. Deiss, *A Brief History of Criminal Jury*

*in the United States*, 61 U.Chi.L.Rev. 867, 871–75 (1994).

Similarly, in England, the Crown frequently endeavored to suppress political dissent and criticism of the Crown by resort to prosecutions for libel. There too, juries frequently resisted those efforts. *See generally Woodfall's Junius: The Letters of Junius From The Latest London Edition* (2 Vols. in 1, New York, Leavitt & Allen Bros. 1870 (?)); Carl B. Cone, *Burke and the Nature of Politics, The Age of the American Revolution* (Vol. 1, University of Kentucky Press 1957); Bertram Newman, *Edmund Burke* 57–58 (New York 1969).

Finally, the Government's argument that a verdict of guilt in this case is required, *see* Trial Transcript dated October 15, 1996, at 38, ignores not only the history referred to above, but also the refusal of juries in Massachusetts to convict admittedly guilty colonial smugglers who evaded British duties on imported tea. Indeed, it was that conduct of colonial juries that led directly to Crown attempts to try smugglers in England, *see generally* Alschuler and Deiss, *supra* at 874–75, which proved to be a precipitating cause of the Declaration of Independence and the end of British rule in America.

even stronger in cases of criminal contempt because the Court, which has issued the Order, must and should have the broadest possible discretion to determine whether the conduct at issue is such that a finding of criminal contempt is necessary to vindicate its authority.

## CONCLUSION

The Court finds both Lynch and Moscinski to be not guilty of criminal contempt. Not only does their sincere religious belief render their conduct lacking in the willfulness which criminal contempt requires, but also, the nature of that conduct, which is purely passive as the videotape shows, and which is at the outermost limits of expressive conduct that is not constitutionally protected, is so minimally obstructive as to justify the exercise of the prerogative of leniency. The charge is therefore dismissed.

It is SO ORDERED.