**UNITED STATES of America,
Appellant,**

v.

**George LYNCH and Christopher
Moscinski, Defendants–
Appellees.**

**No. 97–1092.**

United States Court of Appeals,
Second Circuit.

July 14, 1999.

---

It is further noted that a request for an en banc vote having been made by a judge of the panel that heard the appeal, and a poll of the judges in regular active service having been taken and there being no majority in favor thereof, rehearing en banc is DENIED. Judges Kearse, Leval, Cabranes, Parker, Pooler, and Sotomayor dissent from the denial of en banc reconsideration.

SACK, Circuit Judge (concurring in the denial of rehearing en banc):

My views with respect to this appeal are set forth in my opinion concurring in the majority opinion of the panel, *United States v. Lynch,* 162 F.3d 732, 736 (2d Cir.1998). "Willfulness" is an element of the crime with which the defendants Bishop Lynch and Brother Moscinski were charged; the district court found as a matter of fact that willfulness was not proved; the district court therefore did not "resolve[ ]· against the defendant[s] all of the factual issues necessary to support a finding of guilt," *United States v. Jenkins,* 420 U.S. 358, 367, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); were we to seek to determine on appeal whether that finding of fact is correct, we would ourselves be subjecting the defendants to the second "jeopardy" prohibited by the Double Jeopardy Clause of the Fifth Amendment. I add these words to address one additional aspect of this highly unusual case that becomes prominent now that the government, having lost at the district court and circuit court panel levels, seeks rehearing en banc.

There are, it seems to me, two defining characteristics of this prosecution:

First, the injunction that the defendants Lynch and Moscinski are accused of disobeying was not a garden variety court order requiring them to cease infringing on another person's intellectual property

rights, say, or to make disclosure during the course of pre-trial discovery. It was directed at a species of anti-abortion protest made illegal by the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248. They were prosecuted for participating in a demonstration that obstructed women's access to a clinic where abortions were performed. While irrelevant to the guilt or innocence of the defendants, we would be oblivious if we were not aware that their behavior was thus directed to one of the most highly charged political and moral issues of our time.

Second, despite routinely being faced with acquittals some of which are doubtless manifestly wrong, the government virtually never seeks to have them overturned on appeal. I know of no previous attempt by the Office of the United States Attorney for the Southern District of New York to upset an acquittal on appeal since the passage of the Criminal Appeals Act, 18 U.S.C. § 3731, first effectively permitted such appeals in 1971.[1] They must in any event be exceedingly rare.

The government's efforts to seek en banc review are also out of the ordinary. The Federal Rules of Appellate Procedure provide 14 days for a party to seek rehearing and rehearing en banc. Fed. R.App. P. 40(a)(1). The government, with the twice-granted permission of this Court, took some eleven weeks to do so. It needed the additional time because Southern District prosecutors were required first to obtain permission from the highest reaches of the Justice Department. It was with the explicit approval of the Solicitor General of the United States,[2] "after consultation with the Criminal Division and, in this case, the Civil Rights Division of the United States Department of Justice in Washington," Affidavit of Martin J. Siegel in Support of [Second] Motion for Extension of Time, January 26, 1999, at 2, that the government attempted by this petition a third time to have the defendants Lynch and Moscinski found guilty and punished.

I cannot ascribe to the government any particular motive or motives; neither do I disparage them. And I imply no criticism of the prosecutors in this case. They have done their jobs and done them exceedingly well. That is the point. Their efforts have been so expert and extensive that it may truly be said that the full force of the prosecutorial machinery of the United States government has been summoned here to seek to assure that these two defendants are convicted and punished. This for an alleged crime the *maximum* sentence for which was a modest fine and six months in jail.[3]

I am in perfect agreement with the views of the authors of the majority and dissenting panel opinions on the disposition of this prosecution by the district court. The district court found

> as a matter of fact that [defendants] Lynch's and Moscinski's sincere, genuine, objectively based and, indeed, con-

1. *United States v. Jenkins*, 490 F.2d 868 (2d Cir.1973), aff'd, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), in which the district court had dismissed an indictment after trial, and *United States v. Fayer*, 523 F.2d 661 (2d Cir.1975), the only case in this Circuit cited by the parties in which the government sought to overturn an acquittal, both arose in the Eastern District of New York.

2. Under 28 C.F.R. § 0.20, among the responsibilities that are "assigned to, and shall be conducted, handled, or supervised by, the Solicitor General, in consultation with each agency or official concerned" is "[d]etermining whether, and to what extent, appeals will be taken by the Government to all appellate

courts (including petitions for rehearing *en banc* ... )."

3. The district court held that the defendants had no right to trial by jury because the court had no intention of imposing a jail sentence in excess of six months in the event of conviction, *see United States v. Lynch*, 162 F.3d at 734 n. 1, a position with which the government seems to have agreed. *See* Letter dated November 5, 1996 to District Court from Assistant United States Attorney Martin J. Siegel, at 6 and n. 3 ("The charge in this case is a Class B misdemeanor because it carries a maximum term of imprisonment of six months and a maximum fine of $5,000.")

science-driven religious belief, precludes a finding of willfulness [in their disobeying a court order not to blockade a women's health clinic in which abortions were performed]. Willful conduct, when used in the criminal context, generally means deliberate conduct done with a bad purpose either to disobey or to disregard the law.... That kind of conduct is not present here.

*United States v. Lynch*, 952 F.Supp. 167, 170 (S.D.N.Y.1997) (citation omitted). "No doubt, this was error." *United States v. Lynch*, 162 F.3d at 735 (majority opinion). "[W]illfulness in this context requires nothing more than 'a specific intent to consciously disregard an order of the court.' ... Bad intent is not required." *Id.* at 746 (dissenting opinion) (citation omitted).

Judge Feinberg, dissenting from the panel decision, concluded:

[T]he exercise of nullification by a federal judge—even when termed a "prerogative of leniency"—may create an appearance of injustice that cannot be tolerated by a legal system that strives to resolve cases in a reliable, consistent and objective manner. The arbitrariness of a power that would allow an Article III judge to acquit otherwise guilty defendants if and when the judge sees fit to do so simply cannot be reconciled with the Supreme Court's admonition that "to perform its high function in the best way 'justice must satisfy the appearance of justice.' "

*Id.* at 747 (citation omitted). I find it impossible to disagree.[4] Indeed, it is arguable that because the district court was called upon to preside over proceedings thick with political and moral implications its fastidious adherence to the rule of law was most clearly required and any departure therefrom that much more strongly to be condemned.

But it is not the district judge whom the government seeks for a third time now to convict and punish; it is Bishop Lynch and Brother Moscinski. And it is not the district judge or his decisions that are protected by the Double Jeopardy Clause of the Fifth Amendment; it is these defendants.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense...." *Jenkins*, 420 U.S. at 370, 95 S.Ct. 1006 (quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)). When the awesome power of the United States is fully enlisted in the endeavor of seeking to overturn an acquittal in a case boiling with political significance, it seems to me that the Double Jeopardy Clause attains its full stature as a bulwark for the individual against the virtually unlimited resources of the government employed to achieve its ends of the day.

The case before us, then, is an archetypal one for reliance on the Double Jeopardy Clause, demanding the most punctilious regard for the Fifth Amendment rights of these defendants. Since I have concluded that the government did not have the ability under the Constitution to have a second chance to convict Lynch and Moscinski, I believe all the more that we are wise in not giving the government a third opportunity to try to convict them upon rehearing en banc.

CABRANES, Circuit Judge, with whom Judges PARKER, POOLER, and SOTOMAYOR concur, and with whom Judge LEVAL concurs as to Parts I and II, dissenting from the denial of rehearing en banc:

The petition of the United States to rehear this matter en banc has been denied

---

4. Even counsel for the defendants explicitly agreed during the course of oral argument before the panel "that district courts have no power to nullify" and that "good faith is not justification for an otherwise violation [sic] of the law."

by the vote of an evenly divided court, in which the dissenting judge from the original panel (Judge Wilfred Feinberg) was disabled by law from casting a ballot despite the fact that he would have been entitled to participate in such a rehearing.[1] I respectfully dissent. I do so primarily because this case involves two questions of exceptional importance: (1) the permissibility of an appeal by the Government from an acquittal following a trial without a jury, and (2) the legitimacy of the district court's unprecedented proclamation that both juries and judges, when sitting as triers of fact, enjoy a "prerogative" to nullify the law. I do so also because, in answering the first question and declining to reach the second, the panel majority appears to have engaged in an analysis that conflicts with governing cases, thereby making an en banc rehearing necessary to maintain uniformity of precedent.

## I.

The defendants in this case faced charges of criminal contempt based on their alleged violation of a court-ordered permanent injunction. *See United States v. Lynch,* 162 F.3d 732, 733 (2d Cir.1998).[2] The injunction had been entered by the district court after the defendants had repeatedly impeded access to the parking lot of a medical clinic by sitting in the clinic's driveway. *See id.* After a bench trial, the district court adopted the parties' stipulation that the defendants had returned to the clinic and seated themselves in the driveway, and—importantly—that "they knew of the Court's injunction, and knew that they were enjoined from 'impeding or obstructing automotive or any other form

of ingress into, or egress from, the [Clinic].'" *See United States v. Lynch,* 952 F.Supp. 167, 168 (S.D.N.Y.1997) (quoting the parties' stipulation). Nevertheless, the district court found the defendants not guilty of criminal contempt. Adopting a definition of willfulness that is undisputedly erroneous, the court stated that the defendants' sincere religious belief "preclude[d] a finding of willfulness," and that, in any event, the facts presented "clearly call[ed] for ... that exercise of the prerogative of leniency which a fact-finder has to refuse to convict a defendant, even if the circumstances would otherwise be sufficient to convict." *Id.* at 170, 171. On the Government's appeal, a majority of the three-judge panel concluded that appellate jurisdiction does not exist because it would run afoul of the Fifth Amendment's Double Jeopardy Clause.

## II.

The Double Jeopardy Clause bars a post-acquittal appeal by the Government when the appeal "might result in a second trial [or] translate into further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged." *Smalis v. Pennsylvania,* 476 U.S. 140, 146, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (internal quotation marks omitted). Under this principle, a *general* verdict of "not guilty," whether rendered by a jury or by a judge sitting as a trier of fact, is not appealable, because a judgment of conviction cannot validly be entered without further factual proceedings. If, however, the judge at a bench

---

1. Judge Feinberg is a senior circuit judge of this Court. Under the governing statute, rehearing en banc must be "ordered by a majority of the circuit judges of the circuit who are in regular active service," but "any senior circuit judge of the circuit shall be eligible ... to participate, at his election and upon designation and assignment ..., as a member of an en banc court reviewing a decision of a panel

of which such judge was a member." 28 U.S.C. § 46(c).

2. Notwithstanding this brief statement of facts, familiarity with the opinions of the district court, *United States v. Lynch,* 952 F.Supp. 167 (S.D.N.Y.1997), and of the judges of the panel, *Lynch,* 162 F.3d at 733 (majority opinion); *id.* at 736 (Sack, J., concurring); *id.* at 740 (Feinberg, J., dissenting), is assumed.

trial prepares special findings of fact, *see* Fed.R.Crim.P. 23(c),[3]

> it may be possible upon sifting those findings to determine that the court's finding of 'not guilty' is attributable to an erroneous conception of the law whereas the court has resolved against the defendant all of the factual issues necessary to support a finding of guilt under the correct legal standard.

*United States v. Jenkins,* 420 U.S. 358, 367, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), *overruled on other grounds by United States v. Scott,* 437 U.S. 82, 99, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), *as stated in Smalis,* 476 U.S. at 146 n. 9, 106 S.Ct. 1745. In these circumstances, the governing test is "whether it is 'clear that the court, in its findings of fact and conclusions of law, expressly or even impliedly found against the defendant on all issues necessary to establish guilt under ... the applicable law.'" *United States v. Fayer,* 523 F.2d 661, 663–64 (2d Cir.1975) (quoting *Jenkins,* 420 U.S. at 367, 95 S.Ct. 1006). If so, then there has been a finding of guilt, in substance though not in form, which an appellate court can instruct the trial judge to "reinstate" upon remand without any additional fact-finding. *Cf. Jenkins,* 420 U.S. at 367–68, 95 S.Ct. 1006 (holding that the appeal was barred be-cause, on the record there presented, "there was no ... finding [of guilt], *in form or substance,* to reinstate") (emphasis added).

The case before us is one of first impression, in that the district court not only entered special findings, but also stated that it was resolving an element of the offense—willfulness—in favor of the defendants.[4] The panel majority concludes that this factor is "decisive for double jeopardy purposes." *Lynch,* 162 F.3d at 735.[5] Relying on Supreme Court cases other than *Jenkins,* the panel majority reasons that the Double Jeopardy Clause bars an appeal by the Government "if the ruling of the judge, whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged," even if the ruling is attributable to "erroneous interpretations of governing legal principles." *Id.* at 735 (internal quotation marks and brackets omitted). Those cases, however, establish only that such a ruling constitutes an "acquittal," and it is well settled that Government appeals, even of "acquittals," are not barred unless the success of the appeal "would lead to proceedings that violate the Double Jeopardy Clause." *Smalis,* 476 U.S. at 145–46 & n. 9, 106 S.Ct. 1745.[6]

---

3. Rule 23(c) provides, in pertinent part, that the court must, "on request made before the general finding, find the facts specially."

4. The pertinent finding of the district court was as follows:

> [T]he Court finds as a matter of fact that [the defendants'] sincere, genuine, objectively based and, indeed, conscience-driven religious belief, precludes a finding of willfulness. Willful conduct, when used in the criminal context, generally means deliberate conduct done with a bad purpose either to disobey or to disregard the law. That kind of conduct is not present here.

*Lynch,* 952 F.Supp. at 170 (internal citation omitted). All three members of the panel agreed that, without doubt, the district court's definition of the element of willfulness as requiring bad intent was erroneous. *See Lynch,* 162 F.3d at 735 (majority opinion); *id.* at 746 (Feinberg, J., dissenting). "Wilfulness merely requires 'a specific intent to consciously disregard an order of the court.'" *Id.* at 735 (majority opinion) (quoting *United States v. Cutler,* 58 F.3d 825, 837 (2d Cir.1995)).

5. The panel majority also suggests that it is an open question "whether an appellate court reversing an acquittal from a bench trial would have the power to order a trial court to enter a judgment of conviction based solely upon the trial court's prior findings as to the required elements of guilt." *Lynch,* 162 F.3d at 736. The implication—that an acquittal by a judge sitting as a finder of fact might *never* be appealable—seems in direct conflict with the analysis set forth in *Jenkins* and *Fayer,* as discussed above.

6. The definition of an "acquittal" was significant in these cases, because, in some circumstances, the Government may appeal from a non-"acquittal" even where further factual

It therefore appears that the panel majority, by failing to address directly the central question of whether the appeal would require further factual proceedings, misstates the applicable legal standard.[7] Admittedly, some aspects of the panel majority's opinion suggest that it might have reached the same result even under the appropriate standard. In particular, the panel majority noted that if the trial court were directed to enter a judgment of conviction, "the defendants who would be called upon to serve their sentences would experience such a disposition as a factual reevaluation of guilt by the appellate court, and a new jeopardy." *Lynch*, 162 F.3d at 736. Nevertheless, the majority's holding is based not on this conclusion, but, instead, on the apparent misreading of Supreme Court cases discussed above. Accordingly, I believe that rehearing en banc is necessary to conduct the analysis dictated by the governing precedents.

### III.

Because the petition for en banc rehearing has been denied, it is not necessary to take a definitive position as to whether the required analysis would lead to a conclusion that appellate jurisdiction does in fact exist in this case. Nevertheless, it is appropriate to note that the circumstances presented here demonstrate the potential for a strong argument to be made in certain unusual cases that a district judge, while stating that he was resolving an element of the offense in favor of the defendant, "impliedly found against the defendant on all issues necessary to establish guilt under ... the applicable law." *Fayer*, 523 F.2d at 664 (quoting *Jenkins*, 420 U.S. at 367, 95 S.Ct. 1006).

The logical starting point for this inquiry is the district court's findings of fact. Here, the district court formally incorporated into its findings a number of undisputed facts that had been set forth in a stipulation signed by the parties, including the following:

- That "[o]n August 24, 1996, at approximately 7:30 a.m.," the defendants were seated in the driveway of the Women's Medical Pavilion (the "Clinic") in Dobbs Ferry, New York. *Lynch*, 952 F.Supp. at 168.

- That "[a]t approximately 7:50 a.m., after observing several vehicles unsuccessfully attempt to enter the [Clinic's] parking lot, officers warned [the defendants] that they were violating the law, and that if they did not leave the area immediately, they would be arrested." *Id.*

- That "[the defendants] acknowledged the warning and remained seated." *Id.*

- That "[the defendants] acknowledged that at the time they sat in the Clinic's driveway they knew of the

proceedings might be required. Specifically, the Government may appeal a ruling, requested by the defendant, that terminates the proceedings in the defendant's favor but does not represent a resolution in the defendant's favor of some or all of the factual elements of the offense charged. *See, e.g., Scott,* 437 U.S. at 101, 98 S.Ct. 2187. Where the appeal creates no danger of subjecting the defendant to further factual proceedings, however, the characterization of the decision below as an "acquittal" is irrelevant. *See United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) ("Because we agree with the Government that the constitutional protection against Government appeals attaches only where there is a danger of subjecting the defendant to a second trial for the same offense, we have no occasion to determine whether the ruling in Wilson's favor was actually an 'acquittal' even though the District Court characterized it otherwise.").

7. As discussed above, *Jenkins* and *Fayer* call for application of the "further proceedings" test in the context of an acquittal at a bench trial. It bears underscoring that this standard remains good law:

The fact that the "further proceedings" standard ... was first articulated in [*Jenkins*] does not detract from its authority. [*Scott*] overrules *Jenkins* only insofar as *Jenkins* bars an appeal by the government when a defendant successfully moves for dismissal on a ground unrelated to factual guilt or innocence.

*Smalis,* 476 U.S. at 146 n. 9, 106 S.Ct. 1745.

Court's injunction, and knew that they were enjoined from 'impeding or obstructing automotive or any other form of ingress into, or egress from, the [Clinic].'" *Id.*(quoting the injunction).

Of course, we cannot order the district court to enter a judgment of conviction based on our own finding of the element of willfulness. *See, e.g., Lynch,* 162 F.3d at 740 (Sack, J., concurring). However, when determining whether the district court impliedly found willfulness, we are not necessarily required to ignore the near inevitability of such an inference from these subsidiary factual findings. Furthermore, the district court's findings of fact are to be considered in conjunction with its conclusions of law, which in this case are even more compelling. *See Fayer,* 523 F.2d at 663–64 (articulating applicable test as whether court expressly or impliedly found against defendant "in its findings of fact and conclusions of law").

The district court began its analysis of the law by noting that it had "asked the parties to brief whether it is a *defense* to a criminal contempt charge that a person act with a sincere religious belief that he is acting to save a human life." *Lynch,* 952 F.Supp. at 169 (emphasis added). After a somewhat lengthy consideration of the availability of such a defense, the district court stated that it did not need to resolve the issue, because "the Court finds as a matter of fact that [the defendants'] sincere, genuine, objectively based and, indeed, conscience-driven religious belief, precludes a finding of willfulness." *Id.* at 170.

By way of explanation, the court stated that criminal "willfulness" requires not just "deliberate conduct" but a "bad purpose" in disregarding the law. *Id.* In support of this proposition, the court dis-

cussed only one case, *United States v. Sisson,* 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), a Supreme Court case in which another district court had set aside a jury's guilty verdict after finding that, in light of the defendant's sincere moral belief, the Free Exercise and Due Process Clauses prohibited application of the 1967 draft act. *See Lynch,* 952 F.Supp. at 170; *see also Sisson,* 399 U.S. at 278, 90 S.Ct. 2117. The Supreme Court, however, determined only that the acquittal was non-appealable under the Criminal Appeals Act, not that it was correct.[8] As the panel majority's opinion recognized, a bad purpose or motive is unnecessary for a criminal contempt conviction, and deliberate conduct is sufficient. *See Lynch,* 162 F.3d at 735.

Finally, the district court was clear that, if bad purpose were not required, it would "exercise ... the prerogative of leniency which a fact-finder has to refuse to convict a defendant, *even if the circumstances would otherwise be sufficient to convict.*" *Lynch,* 952 F.Supp. at 171 (emphasis added).

In sum, the district court: (1) expressly made subsidiary findings of fact that could be viewed as pointing almost inevitably to a conclusion of willfulness, (2) nevertheless considered, in light of these findings, whether religious belief might be a defense to criminal contempt, (3) abruptly changed its tack and found "as a matter of fact" that religious belief "precludes" a finding of willfulness, based on a determination that "willfulness" requires not only deliberateness but a bad purpose or motive, (4) suggested that this erroneous legal definition and conclusion were critical to its determination that the elements of criminal contempt had not been met, and (5) proclaimed its intention to exercise a perceived "prerogative" to nullify the law by

8. The holding of *Sisson* is inapplicable here, because the case was governed by the Criminal Appeals Act, 18 U.S.C. § 3731, in its "awkward and ancient" form, *Sisson,* 399 U.S. at 308, 90 S.Ct. 2117, before it was amended by Congress "to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *Wilson,* 420 U.S. at 337, 95 S.Ct. 1013.

refusing to convict even if those elements *had been* met.

In these circumstances, en banc review of this case might have led to the conclusion that the district court found willfulness, properly defined, and would have been forced to say so more explicitly were it not for its erroneous reliance on the absence of bad purpose.[9] The potential for such a conclusion, coupled with the district court's apparent maneuvering,[10] would, I believe, have given the en banc court good reason to pause and consider whether it would "elevate[ ] form over substance," *see Lynch*, 162 F.3d at 745 (Feinberg, J., dissenting), to give dispositive effect to the district court's *purported* resolution of the willfulness element in the defendants' favor.

## IV.

Finally, if we were to conclude that appellate jurisdiction does exist and that the district court's "no willfulness" determination is reversible, we would then be squarely confronted with the district court's alternative basis for acquittal—that the defendants' actions "clearly call for . . . that exercise of the prerogative of leniency which a fact-finder has to refuse to convict a defendant, even if the circumstances would otherwise be sufficient to convict." *Lynch*, 952 F.Supp. at 171. All else being equal, it might be sufficient to state that the district court's proclamation and exercise of this "prerogative" presents a second exceptionally important issue that would be reached if appellate jurisdiction exists. Despite having found jurisdiction to be lacking, however, the panel majority noted its belief that "[i]t is altogether unclear whether this prerogative amounts to nullification . . . or is something else." *See Lynch*, 162 F.3d at 736 n. 3. In my view, this *dictum* is potentially dangerous, in that it might be read as a suggestion that,

9. In other words, a strong argument can be made that the district court did not find against the Government on the issue of willfulness, properly defined ("a specific intent to consciously disregard an order of the court," *Lynch*, 162 F.3d at 735 (internal quotation marks omitted)), but, instead, acquitted the defendants based solely on a finding against the Government on an immaterial issue (whether the defendants acted out of sincere religious belief).

As discussed above, the panel majority inquired only into whether the district court had entered a finding with respect to willfulness under its own, erroneous legal definition of that element. The panel majority relied on the Supreme Court's statement that, for the purpose of determining whether a ruling constitutes an "acquittal" for double jeopardy purposes, it does not matter that the ruling is attributable to "erroneous interpretations of governing legal principles." *Scott*, 437 U.S. at 98, 98 S.Ct. 2187. But this statement was made by the *Scott* Court because, in determining whether the Double Jeopardy Clause bars further factual proceedings after a ruling in the defendant's favor, all that matters is whether the ruling "relate[s] to the ultimate question of guilt or innocence." *Id.* at 98 n. 11, 98 S.Ct. 2187. By contrast, when one is actually determining whether further factual proceedings might be required, it *does* matter whether "the court's finding of 'not guilty' is attributable to an erroneous conception of the law whereas the court has resolved against the defendant all of the factual issues necessary to support a finding of guilt *under the correct legal standard.*" *Jenkins*, 420 U.S. at 367 (emphasis added).

Accordingly, the panel majority should have analyzed whether the district court found willfulness, *properly defined.* There is at least a strong argument—warranting consideration by an en banc court—that the district court did just that.

10. The en banc court might have considered whether the district court designed its decision as a "factual" determination in an effort to insulate the acquittal from appeal. In addition to noting the non-appealability of the analogous order in *Sisson*, the district court had expressed, in a pre-trial conference, a belief that its factual determinations would be entirely unreviewable: "In a criminal case the Court of Appeals doesn't have the power to review anything I do on a clearly erroneous standard or otherwise. . . ." *See Lynch*, 162 F.3d at 746 (Feinberg, J., dissenting) (quoting from transcript). The en banc court might have questioned whether, in light of this assertion and the sequence outlined above, the panel majority's opinion is accurate where it notes that "the district court['s] findings exhibit perfect candor." *Lynch*, 162 F.3d at 736 n. 3.

although the courts have repeatedly deplored nullification, triers of fact may yet have a right to "refuse to convict," *see Lynch,* 952 F.Supp. at 171, despite having found facts that require conviction under the applicable law. Accordingly, I think it appropriate to note my own view that there is no basis for the panel majority's suggestion that a distinction may exist between "nullification" and a "prerogative of leniency," much less that any such distinction might be significant.

In *United States v. Thomas,* 116 F.3d 606 (2d Cir.1997), we restated well-established principles that "the power of juries to 'nullify' *or exercise a power of lenity* is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent," *id.* at 615 (emphasis added), because verdicts resulting from nullification " 'are lawless, a denial of due process and constitute an exercise of erroneously seized power.' " *Id.* at 616 (quoting *United States v. Washington,* 705 F.2d 489, 494 (D.C.Cir.1983) (per curiam) (Robinson, MacKinnon, R.B. Ginsburg, JJ.)). Although the district court's decision was rendered four months before *Thomas,* it was preceded by a century-old line of cases holding that jury nullification is a power and not a right. *See, e.g., Standefer v. United States,* 447 U.S. 10, 22, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) referring to nullification as an "assumption of a power which [the jurors] had no right to exercise, but to which they were disposed through lenity") (internal quotation marks omitted);

*Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (same) (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir.1925) (L. Hand, J.)); *Sparf v. United States,* 156 U.S. 51, 101, 15 S.Ct. 273, 39 L.Ed. 343 (1895) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."). As eloquently expressed by Judge Feinberg in his dissenting opinion, the damage to our judicial system is exponentially greater when a judge, in whom the Constitution entrusts the power "to say what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 (1803), proclaims for himself and purports to exercise a "prerogative" to nullify the law by acquitting guilty defendants if and when he sees fit to do so, thereby engaging in the very same lawless usurpation of power that he is bound to do his utmost to prevent.[11]

As noted above, if we were to rehear this case en banc and find that appellate jurisdiction exists, we would be in a position to offer an appropriate condemnation of the assertion of a "prerogative of leniency" by a judge acting as a trier of fact. Even if we were to conclude that no jurisdiction exists, we could—at the very least—expunge the panel majority's potentially dangerous *dictum.* In my view, this prospect only adds strength to the appropriateness of rehearing this appeal en banc for the primary purpose of correcting the panel majority's apparent misstatements

---

11. Even the *power* of a judge to nullify the law—as distinct from the right to do so, which does not exist—is narrowly circumscribed. As we explained in *Thomas,* the jury's nullification power derives from the advent of the general verdict and "the several rules protecting the unassailability of jury verdicts of acquittal." 116 F.3d at 615. In a bench trial, by contrast, the court must, "on request made before the general finding, find the facts specially," Fed.R.Crim.P. 23(c), and an acquittal is subject to appellate review and reversal if "it is 'clear that the court, in its findings of fact and conclusions of law, expressly or even impliedly found against the defendant on all issues necessary to establish guilt under ... applicable law.' " *Fayer,* 523 F.2d at 663–64 (quoting *Jenkins,* 420 U.S. at 367, 95 S.Ct. 1006). Furthermore, "nullification" by a jury is made possible by the fact that jurors, " 'unlike any official, are in no wise accountable, directly or indirectly, for what they do, and [they] at once separate and melt anonymously in the community from which they came.' " *Thomas,* 116 F.3d at 615 (quoting *U.S. ex rel. McCann v. Adams,* 126 F.2d 774, 776 (2d Cir.) (L. Hand, J.), *rev'd on other grounds,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

and then conducting the double jeopardy analysis that is called for by the governing precedents. Accordingly, I respectfully dissent from the denial of en banc review.